The STATE of Ohio, Appellee,

v.

SIDIBEH, Appellant.

[Cite as *State v. Sidibeh*, 192 Ohio App.3d 256, 2011-Ohio-712.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–331.

Decided Feb. 17, 2011.

258

Ron O'Brien, Franklin County Prosecuting Attorney, and Laura R. Swisher, Assistant Prosecuting Attorney, for appellee.

Dennis Pusateri, for appellant.

FRENCH, Judge.

{¶ 1} Defendant-appellant, Hassan Sidibeh, appeals the judgment of the Franklin County Court of Common Pleas convicting him of offenses pertaining to an October 12, 2008 home invasion. For the following reasons, we affirm in part and reverse in part the trial court's judgment, and we remand the matter for further proceedings.

{¶ 2} Appellant was indicted on one count of aggravated burglary, four counts of aggravated robbery, four counts of kidnapping, and eight counts of robbery, with each count containing a firearm specification. The charges stem from appellant's participation in an October 2008 home invasion with Kacey Brown and Robert Vann. The incident occurred at the home of Paris Carter and her three children, Raheem, Raven, and Rhea. Appellant, a juvenile, was indicted for the incident after the juvenile court bound him over to be tried as an adult under the trial court's jurisdiction. Appellant pleaded not guilty to the charges in the indictment, and a jury trial ensued.

{¶ 3} At the beginning of trial, the court instructed the jury that the parties' opening statements were not evidence and that the jury could not base its verdict on the opening statements. During opening statements, defense counsel contended that only one of the home-invasion victims identified appellant as a perpetrator.

{¶ 4} Next, the trial court admitted into evidence Raheem's testimony from appellant's bindover hearing. Raheem was unavailable to testify at trial because he had died in an incident unrelated to the home invasion. At the bindover hearing, Raheem had testified that appellant, Brown, and Vann committed the home invasion around 10:45 p.m. He recognized appellant when the incident occurred, and during the bindover hearing, he identified appellant as a participant of the home invasion. Appellant's defense counsel, who was different from the one at trial, cross-examined Raheem. During cross-examination, Raheem testified that he had seen a photograph of appellant on a social-networking website before the home invasion. He said that he had not seen appellant "in person" before the incident, however.

{¶ 5} At trial, Paris testified as follows about the home invasion. Around 9:30 or 10:00 p.m. on October 12, 2008, Rhea said that someone was at the door. Paris looked through a peephole of the door and saw a boy, whom she identified in court as appellant. She also saw another boy, wearing glasses, standing at the corner of her porch. She opened the door slightly, and appellant asked for Raheem. Although Raheem told Paris that he did not know who was at the door, he opened the door, and appellant barged in, brandishing a gun, followed by the boy with glasses and another boy with a blue bandana around his face. Appellant forced Paris, Rhea, and Raheem to lie down in the hallway. Raven was hiding in another room at the time.

{¶ 6} Appellant stayed with Paris and her children while the other boys rummaged through the house. Paris asked to hold Rhea, who was crying, but appellant said no. He added, "As long as you all cooperate, we'll cooperate." Meanwhile, the boy with the bandana found Raven and told her to stay with the

rest of her family. Eventually, after being in the house for five or ten minutes, the boys left with a video-game system and television.

{¶ 7} During Paris's direct examination, the prosecutor produced a photo array from which the witness had previously identified appellant, and Paris confirmed in her testimony that she made the prior identification. Defense counsel objected and requested a mistrial because the photo array had not been disclosed during discovery. Defense counsel claimed that the discovery violation was prejudicial because, had he known about the photo array, he would not have argued during opening statements that only one of the home-invasion victims, i.e., Raheem, could identify appellant as a perpetrator. The trial court denied the motion for a mistrial but instructed the jury to disregard the photo array and testimony about it. The court told the jury, however, that its instruction did not pertain to Paris's in-court identification of appellant, although defense counsel also objected to that identification. In addition, the court continued the trial until the next day to give appellant time to reorganize his defense.

{¶ 8} After the trial resumed, defense counsel cross-examined Paris, when she admitted seeing appellant before in juvenile court. She also testified about a photograph of appellant, his brother, and Brown. Paris recognized appellant in the photograph, and she said that her daughter showed her that photograph from a social-networking website. Defense counsel asked whether Paris saw that photograph on October 13, 2008, after the home invasion, and Paris said she was not sure.

{¶ 9} Vann testified as follows on direct examination. During the October 2008 home invasion, he and Brown stole a television and video-game system while appellant, brandishing a gun, restrained the victims. Vann originally faced 20 years' imprisonment for his involvement in the home invasion. He entered into a plea bargain with the prosecution, however, in which he was sentenced to a total of four years' imprisonment in exchange for testifying against appellant. Next, Vann testified that he was previously in a gang but not when the home invasion occurred.

{¶ 10} On cross-examination, Vann repeated his testimony about his favorable plea bargain, noting that he was originally charged with 17 counts but pursuant to his plea bargain, he was convicted on only four of them. He also reiterated that he was previously in a gang.

{¶ 11} Brown confirmed during his testimony that he committed the home invasion with Vann and appellant. On direct examination, the prosecutor asked Brown about the photograph identified by Paris. Brown acknowledged that he and appellant were in the photograph and that they had blue bandanas. Brown noted that blue is the color associated with a gang he used to be in, and he said that appellant was making a gang sign with his hand.

{¶ 12} On cross-examination, Brown testified that he and appellant used to be in a gang together, but he claimed the home invasion was not gang-related. Next, Brown said that he entered into a plea bargain with the prosecution, in which he received a sentence of five years' imprisonment for his offenses in exchange for testifying against appellant. Defense counsel asked Brown how much prison time he was facing before the plea bargain. The prosecutor objected. The trial court sustained the objection and admonished the jury, "[Y]ou'll get instructions during the deliberations that you're not to consider punishment * * *. Do not allow any discussion regarding this Defendant's case in any way to affect anything about your deliberations for * * * [appellant's] case." Despite the trial court's ruling, defense counsel asked Brown if a detective or his attorney told him how much prison time he was originally facing, and Brown said no. Defense counsel asked Brown if a detective told him he was originally facing 53 years' imprisonment. The prosecutor objected, and the trial court sustained the objection. After the parties discussed the matter further, the trial court indicated that it would allow defense counsel to ask Brown again if a detective told him how much prison time he was originally facing, but the court instructed the jury that what a detective may have said does not mean that Brown was, in fact, facing that amount of prison time. Defense counsel did not ask his question again. Instead, defense counsel elicited testimony from Brown, without objection, indicating that, pursuant to his plea bargain, he received a "reduction in [his] sentence" after being charged with multiple offenses, including aggravated robberies, aggravated burglaries, and kidnappings.

{¶ 13} Detective Brian Boesch testified that Raven and Raheem gave him the photograph identified by Paris. Raheem told him that two of the home-invasion perpetrators were in the photograph. Boesch showed the photograph to appellant, who admitted to being one of the boys in the photograph. Boesch arrested appellant based on that admission.

{¶ 14} On cross-examination, Boesch said that he was shown the photograph on the evening of the home invasion, and he obtained a copy by e-mail that night or the following evening. He also testified that Paris had seen the photograph on the computer at her house.

{¶ 15} At the close of the prosecution's case-in-chief, the trial court admitted the photograph into evidence without objection from defense counsel. Next, the trial court granted the defense's Crim.R. 29 motion for acquittal on the two aggravated-robbery and four robbery charges pertaining to Rhea and Raven.

{¶ 16} Jeff Dybdahl, appellant's soccer coach, testified as follows for the defense. Dybdahl conducted soccer practice on Sundays from 4:00 to 5:30 or 6:00 p.m. He regularly brought appellant to practice and took him home afterward. He could not remember, however, whether appellant was at practice on Sunday,

October 12, 2008. He said, "[I]f things were as they usually were, I gave [appellant] a ride" to and from practice. He acknowledged that appellant has missed practice, but only if he was out of town.

{¶ 17} Appellant's brother, Alieu Sidibeh, testified that appellant had an 11:00 p.m. curfew on Sundays. Alieu said he did not remember whether he was with appellant during the evening of October 12, 2008. Defense counsel asked whether appellant ever missed curfew, and Alieu said no. At this point, the prosecutor objected. While discussing the objection with the parties, the trial court indicated that Alieu was not providing a valid alibi because he could not remember whether he was with appellant the evening of the home invasion. Defense counsel said that he was asking about appellant's history of complying with his curfew to "establish * * * memory, time." The trial court decided that defense counsel's questions were proper, but it instructed the jury that "[t]he witness is testifying somewhat that he behaved in a certain way all the time and that his brother behaved in a certain way all the time, you may not accept it for that at all * * *. The only purpose this line of questioning has is testing this witness' memory." Alieu provided no additional testimony after that instruction.

{¶ 18} Next, the prosecutor objected to appellant calling his mother to testify because defense counsel did not include her on the list of alibi witnesses and because she was in the courtroom during part of the trial. Defense counsel contended that appellant's mother would provide beneficial testimony for appellant, noting that she "was going to say that she was home [on October 12, 2008] and her kids [were] home." Defense counsel said that appellant's mother was inadvertently left off the witness list, and he argued that it was irrelevant that she was present during part of the trial because there was no order for a separation of witnesses. The trial court ruled that appellant's mother would be allowed to testify, but not for purposes of providing an alibi. Defense counsel decided not to have appellant's mother testify at all, however.

{¶ 19} Appellant testified on his own behalf. He denied participating in the October 12, 2008 home invasion. He said that he was at soccer practice that day. He did not mention where he was that evening, but he claimed that he was not with Vann or Brown. He said that he was not in a gang and that he was not displaying a gang sign in the photograph admitted by the state.

{¶ 20} On cross-examination, appellant acknowledged that he was wearing a blue bandana in the photograph and that blue is associated with a local gang. He also testified that he invited Brown to live in his home, and he knew that Brown was in a gang. According to appellant, he and Brown lived together for only two months and not in October 2008.

{¶ 21} Lastly, defense counsel moved to admit into evidence the written plea agreements of Vann and Brown. Defense counsel wanted to use the exhibits

because they would inform the jury about the sentences Vann and Brown faced before they entered into their plea bargains. The trial court ruled that the exhibits were inadmissible but said that it would allow a stipulation as to the maximum sentences Vann and Brown faced after entering into the plea bargains. Defense counsel rejected that offer, however, and objected to not being allowed to provide evidence on the sentences Vann and Brown faced before they entered into their plea bargains.

{¶ 22} During closing argument, the prosecutor noted that although appellant claimed he was not in a gang, he was displaying a gang sign and wearing a color associated with a gang in the photograph. The prosecutor also mentioned that appellant invited Brown, a gang member, into his home. The prosecutor said, however, "Now, this whole gang thing, no, this wasn't gang related. And the State of Ohio didn't give you that information to try to do what are called a bad guy argument. We didn't ask you to piggyback the gang argument and then prove that he's a robber and burglar. We showed you that to question his credibility * * *. That's all you are to consider it for."

{¶ 23} Defense counsel asserted during closing argument that Paris was not credible when she identified appellant as a participant in the home invasion. He suggested that the identification was based on her seeing appellant in the photograph.

{¶ 24} During deliberations, the jury asked whether the plea bargains of Vann and Brown would be revoked if they committed perjury. The trial court responded, "You have received all the evidence that you will hear regarding this case." Afterward, the jury found appellant guilty of all charges and specifications remaining after the trial court's ruling on appellant's Crim.R. 29 motion. The trial court sentenced appellant to 18 years' imprisonment. It merged the robbery offenses into the other counts, and it merged the firearm specifications. But it concluded that the aggravated-robbery and kidnapping offenses pertaining to Paris and Raheem did not merge.

{¶ 25} Appellant appeals, raising the following assignments of error:

[I.] The trial court erred when it refused to permit the defendant to present evidence of his alibi.

[II.] The trial court erred when it gave a limiting instruction striking important defense habit and routine practice testimony.

[III.] The trial court erred when it permitted the reading of a transcript of former testimony under Evid.R. 804(B)(1) without satisfying either the right of confrontation or the requirement for indicia of reliability.

[IV.] The trial court erred when it permitted the admission of a photograph to show the defendant to be a gang member, permitted testimony that the

defendant was a gang member, and permitted the state to argue in closing that the defendant was a gang member, even though the state conceded the crimes were not gang-related; there was no "gang" specification in the indictment; and the prejudicial nature of the evidence is far greater than its probative value.

[V.] The trial court erred when it denied the defendant's motion for a mistrial after the state's use of a photo array that had not been disclosed in discovery.

[VI.] The trial court erred by limiting cross-examination of testifying co-defendants, and providing an erroneous and damaging jury instruction regarding the use the jury could make of plea bargains the co-defendants struck in return for their testimony against defendant-appellant.

[VII.] The trial court erred when it sentenced the defendant to separate and consecutive terms of imprisonment upon aggravated robbery and kidnapping counts that constitute allied offenses of similar import and violate the prohibitions against double jeopardy.

[VIII.] Defendant-appellant did not receive the effective assistance of counsel.

[IX.] The cumulative nature of the errors in the first eight assignments of error deprived defendant-appellant of a fair trial.

{¶ 26} In his first assignment of error, appellant argues that we must reverse his conviction because the trial court did not allow his mother to provide alibi testimony. We disagree.

{¶ 27} According to appellant's defense counsel at trial, appellant's mother was going to testify that she was home with her children on the day of the October 2008 home invasion. The trial court would not allow that testimony because defense counsel did not include appellant's mother on the witness list during discovery and because she was present during part of the trial. Appellant does not dispute that his defense counsel was required to include his mother on the witness list, but he argues that the trial court need not have barred the witness from providing alibi testimony.

{¶ 28} To be sure, the trial court is obliged to impose the least severe sanction possible for a discovery violation. *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, paragraph two of the syllabus. We review whether any error from the trial court was harmless, recognizing that appellant preserved the issue for appeal by arguing against the exclusion of the alibi testimony. See Crim.R. 52(A); *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. Under this review, "[e]rror in the admission or exclusion of evidence in a criminal trial must be considered prejudicial unless the court can

declare, beyond a reasonable doubt, that the error was harmless, and unless there is no reasonable possibility that the evidence, or the exclusion of evidence, may have contributed to the accused's conviction." *State v. Jones,* 10th Dist. No. 07AP–771, 2008-Ohio-3565, 2008 WL 2779746, ¶ 13, citing *State v. Bayless* (1976), 48 Ohio St.2d 73, 106, 2 O.O.3d 249, 357 N.E.2d 1035, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155. The prosecution bears the burden of demonstrating harmless error. *Perry* at ¶ 15.

{¶ 29} Plaintiff-appellee, the state of Ohio, asserts that any error in the trial court's decision to exclude the alibi testimony from appellant's mother did not prejudice appellant, and we agree. For instance, it is unclear from the proffer of the testimony whether appellant's mother would have testified that she was home with appellant at the moment the October 2008 incident was occurring. Furthermore, appellant failed to establish his alibi during his own testimony, and the prosecution sufficiently refuted the alibi by presenting corroborating evidence from multiple witnesses implicating appellant in the home invasion. Consequently, we overrule appellant's first assignment of error.

{¶ 30} In his second assignment of error, appellant contends that it was improper for the trial court to instruct the jury that testimony about his past compliance with an 11:00 p.m. curfew could not be construed as establishing his habit of obeying the curfew. He relies on Evid.R. 406, which states, "Evidence of the habit of a person * * * is relevant to prove that the conduct of the person * * * on a particular occasion was in conformity with the habit." At trial, however, appellant's defense counsel did not argue that he was using the testimony to establish appellant's habit of obeying his Sunday curfew. Instead, defense counsel claimed he was trying to refresh the memory of the witness who provided the testimony, presumably because that witness, appellant's brother Alieu, initially said he could not remember if he was with appellant during the evening the home invasion occurred. The trial court admitted the testimony for the purpose appellant's defense counsel intended, and appellant forfeited all but plain error on his new argument under Evid.R. 406. See Crim.R. 52(B). Plain error exists when there is error, the error is an obvious defect in the trial proceedings, and the error affects substantial rights, i.e., affects the outcome of the trial. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Id.

{¶ 31} Applying the plain-error standard to appellant's argument under Evid.R. 406, we conclude that the jury could have reasonably declined to infer from Alieu's testimony that appellant had a habit of obeying his Sunday curfew given that Alieu was uncertain whether he was with appellant the evening of the

home invasion. Furthermore, as we have already recognized, the prosecution sufficiently refuted appellant's alibi by presenting corroborating evidence from multiple witnesses implicating appellant in the home invasion, and appellant failed to establish his alibi during his own testimony. In any event, even if the jury would have concluded that appellant had a habit of obeying his Sunday curfew, the jury may have properly found that fact irrelevant based on Paris's testimony that the home invasion occurred around 9:30 or 10:00 p.m., well before appellant's curfew.

{¶ 32} Consequently, we find that the trial court did not commit plain error when it prohibited the jury from inferring from Alieu's testimony that appellant had a habit of obeying his Sunday curfew, given that the trial court's decision did not affect the outcome of the trial. Thus, we overrule appellant's second assignment of error.

{¶ 33} In his third assignment of error, appellant argues that the trial court erred by admitting Raheem's bindover-hearing testimony into evidence. We disagree.

{¶ 34} Because appellant did not object to the admissibility of that testimony at trial, he forfeited all but plain error. Crim.R. 52(B). The trial court admitted the evidence under Evid.R. 804(B)(1), which allows for the admission of testimony from an unavailable witness given "at another hearing of the same or a different proceeding * * * if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Evid.R. 804(B)(1) also states that "[t]estimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability."

{¶ 35} This court has previously allowed the admission of bindover-hearing testimony under Evid.R. 804(B)(1). See *State v. Strickland*, 10th Dist. No. 06AP–1269, 2008-Ohio-1104, 2008 WL 660314, ¶ 44–63 ("*Strickland I*"); *State v. Hairston*, 10th Dist. No. 08AP–735, 2009-Ohio-2346, 2009 WL 1396434, ¶ 32–35. Appellant argues, however, that Raheem's testimony did not satisfy the requirements of Evid.R. 804(B)(1) because his defense counsel engaged in deficient cross-examination. And appellant contends that due to this deficient cross-examination, Raheem's testimony was inadmissible pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which guarantee a defendant the right to confront and cross-examine witnesses.

{¶ 36} But Evid.R. 804(B)(1) is not concerned with "the actual cross-examination itself." *Strickland I* at ¶ 58, citing *State v. Howard*, 2d Dist. No. 19413, 2003-Ohio-3235, 2003 WL 21419180, ¶ 33. Instead, the rule requires that a

party have an opportunity for cross-examination. *Strickland I* at ¶ 58. Likewise, a defendant's constitutional right to confront witnesses "guarantees only an *opportunity* for cross-examination." (Emphasis sic.) *State v. Jordan*, 10th Dist. No. 06AP–96, 2006-Ohio-6224, 2006 WL 3411420, ¶ 25, citing *United States v. Owens* (1988), 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951. Appellant was given an opportunity to cross-examine Raheem, and we need not consider appellant's challenges to the adequacy of that cross-examination.

{¶ 37} Appellant also claims that Raheem's testimony was inadmissible under Evid.R. 804(B)(1) because it was unreliable. He asserts that Raheem claiming to have recognized him during the home invasion conflicts with Paris testifying that Raheem indicated otherwise. But the reliability of Raheem's testimony is established from it being provided under oath and subject to cross-examination. See *Strickland I* at ¶ 60. Further, we cannot say that Raheem's testimony was unreliable given that Paris, Vann, and Brown corroborated it on the ultimate issue of the trial—that appellant was involved in the home invasion.

{¶ 38} Consequently, Raheem's bindover-hearing testimony was admissible. The trial court did not commit plain error by admitting the testimony into evidence, and we overrule appellant's third assignment of error.

{¶ 39} In his fourth assignment of error, appellant contends that we must reverse his conviction because the trial court allowed for the admission of evidence and argument from the prosecutor implying his involvement in a gang. We disagree.

{¶ 40} The prosecutor elicited testimony from Brown indicating that in the photograph admitted as an exhibit, appellant was displaying a gang sign and wearing a color associated with a gang. Afterward, the prosecutor used the photograph, and Brown's accompanying testimony, to cross-examine appellant about whether he was in a gang and to assert during closing argument that appellant was in a gang. The prosecutor contended at trial that he used the evidence to impeach appellant's claim that he was not involved in a gang. Appellant argues, however, that the evidence could not be used to impeach his claim that he was not in a gang because that issue was a collateral matter in the trial given that the home invasion was not gang-related. See *State v. Smith*, 10th Dist. No. 04AP–726, 2005-Ohio-1765, 2005 WL 859484, ¶ 39 (stating that extrinsic evidence is inadmissible to impeach a collateral matter, which is a matter having no bearing on the issue to be decided at trial). For this reason, appellant also argues that the trial court improperly allowed the prosecutor to raise the gang-related issue during closing argument. We review appellant's argument under the plain-error standard because he did not raise it at trial. Crim.R. 52(B). Appellee contends that the trial court did not commit plain error by allowing for

the admission of evidence and argument from the prosecutor implying appellant's involvement in a gang, and we agree.

{¶ 41} The gang-related evidence and argument did not affect the outcome of appellant's trial because the prosecutor admonished the jury against improperly inferring guilt from it and because corroborating evidence implicating appellant in the home invasion allowed the jury to convict him without having to make any improper inferences. We also discern no prejudice from the admission of the photograph because defense counsel used that evidence to try to establish that Paris misidentified appellant as a perpetrator in the home invasion after seeing him in the photograph.

{¶ 42} Accordingly, we conclude that the trial court did not commit plain error by allowing the admission of evidence and argument from the prosecutor implying appellant's involvement in a gang. Thus, we overrule appellant's fourth assignment of error.

{¶ 43} Appellant asserts in his fifth assignment of error that the trial court erred by denying his motion for a mistrial. We disagree.

{¶ 44} A mistrial should not be ordered merely because of some error or irregularity at trial. *State v. Dennis,* 10th Dist. No. 08AP–369, 2008-Ohio-6125, 2008 WL 5049749, ¶ 23. A mistrial is an extreme remedy, declared only when a fair trial is no longer possible. Id. The trial court is in the best position to determine whether a mistrial should be declared. *State v. Ahmed,* 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 92. Thus, the decision whether to grant a mistrial is within the discretion of the trial court, and we will not disturb that decision on appeal absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 45} We now address whether the trial court abused its discretion by denying appellant's motion for a mistrial. Appellant requested the mistrial because, during Paris's direct examination, the prosecutor produced a photo array, not disclosed during discovery, from which the witness had previously identified appellant. To support the request for a mistrial, appellant's defense counsel claimed that the discovery violation was prejudicial because, had he known about the photo array, he would not have argued during opening statements that only one of the home-invasion victims, i.e. Raheem, could identify appellant as a perpetrator. But a mistrial was unnecessary to rectify this problem because the trial court instructed the jury not to base its verdict on opening statements, and the jury is presumed to have followed the instruction.

See *State v. Treesh* (2001), 90 Ohio St.3d 460, 480, 739 N.E.2d 749. In addition, the court instructed the jury to disregard the photo array and testimony about it.

{¶ 46} Although the court did not strike Paris's in-court identification of appellant, it granted appellant a continuance to allow him time to readjust his defense due to the newly discovered information. This remedy proved to be sufficient because, during the cross-examination of Paris and closing argument, defense counsel was able to challenge Paris on her identification of appellant as a perpetrator. Specifically, he suggested that Paris's identification was based not on her recognizing appellant from the home invasion, but on her seeing a photograph of appellant on a social-networking website and seeing him in juvenile court.

{¶ 47} For all these reasons, we conclude that the trial court's sanctions appropriately redressed the prosecution's discovery violation and that, therefore, the court need not have declared a mistrial. See *Lakewood* at paragraph two of the syllabus. Thus, the trial court did not abuse its discretion by denying appellant's motion for a mistrial, and we overrule his fifth assignment of error.

{¶ 48} In his sixth assignment of error, appellant argues that we must reverse his conviction because the trial court interfered with his right to impeach Vann and Brown with their plea bargains. We disagree.

{¶ 49} Defense counsel asked Brown, during cross-examination, how much prison time he was facing before his plea bargain with the prosecution. The prosecutor objected. The trial court sustained the objection and instructed the jury not to consider the "discussion" Brown had about his punishment before he entered into his plea bargain. This was erroneous because a witness's plea arrangement with the prosecution is relevant and admissible to reveal potential bias. *State v. Hairston* (Sept. 28, 2001), 10th Dist. No. 01AP–252, 2001 WL 1143191.

{¶ 50} Appellant argued to the trial court that he should be allowed to present information about the sentences appellant's co-defendants faced before their plea bargains. Because appellant preserved the issue for appeal, we review it under the harmless-error standard. Crim.R. 52(A); *Perry* at ¶ 15. Appellant contends that prejudice to his trial is shown through the jury asking whether the plea bargains of appellant's co-defendants would be revoked if they committed perjury. There is nothing to indicate from the question that the jury was focused on how much prison time the co-defendants faced before their plea bargains, however.

{¶ 51} In addition, we find nothing else in the record establishing that appellant suffered prejudice as a result of the trial court's interference with his right to impeach witnesses with their plea bargains. The trial court eventually

permitted defense counsel to ask Brown whether a detective told him how much prison time he was originally facing for the home invasion, but defense counsel declined to ask the question. And during another part of his testimony, Brown actually testified that he was not informed of how much prison time he was facing before his plea bargain. To be sure, the trial court later rejected defense counsel's request for the admission of Brown's written plea agreement, in order to inform the jury about the sentence Brown originally faced, but at that time, Brown was not present to confirm that he understood what sentence he originally faced before he entered into the plea agreement. In any event, Brown was allowed to testify that he received a "reduction in [his] sentence" due to his plea bargain. Moreover, given that other witnesses corroborated Brown's testimony implicating appellant in the home invasion, the jury could have reasonably rejected any claim that Brown was not credible just because he entered into a favorable plea arrangement with the prosecution.

{¶ 52} Vann also testified that he entered into a plea bargain in which he received a favorable sentence in exchange for testifying against appellant. Appellant argues that the trial court's instruction pertaining to testimony about Brown's plea bargain effectively admonished the jury not to consider any testimony about Vann's plea bargain. But the trial court did not mention Vann's testimony when it provided the instruction pertaining to Brown's plea bargain, and, significantly, there was no objection to Vann's testimony about his plea bargain. In any event, even if the trial court's instruction was general enough to cover Vann's testimony, this would constitute harmless error because other witnesses corroborated Vann's testimony implicating appellant in the home invasion, and therefore, the jury could have reasonably rejected any claim that Vann was not credible merely because of his favorable plea arrangement with the prosecution.

{¶ 53} To repeat, the trial court committed harmless error when it interfered with appellant's right to impeach Vann and Brown with their plea bargains. Therefore, we overrule appellant's sixth assignment of error.

{¶ 54} In his seventh assignment of error, appellant argues that the trial court was required to merge the kidnapping offense pertaining to Paris with the aggravated-robbery offense pertaining to that victim. He also argues that the trial court was required to merge the kidnapping offense pertaining to Raheem with the aggravated-robbery offense pertaining to that victim. We agree.

{¶ 55} Because appellant did not raise the merger issue at trial, the plain-error standard applies. See *State v. Elmore,* 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 127; Crim.R. 52(B). Plain error exists when a trial court was required to, but did not, merge a defendant's offenses because the defendant

suffers prejudice by having more convictions than authorized by law. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31.

{¶ 56} R.C. 2941.25, Ohio's multiple-count statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 57} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 44, the Supreme Court of Ohio recently overruled *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, which held that R.C. 2941.25 called for an abstract analysis of multiple offenses. The court in *Johnson* concluded that the statute "instructs courts to examine a defendant's conduct—an inherently subjective determination." Id. at ¶ 52. Pursuant to *Johnson*, "[i]f the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" Id. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., concurring in judgment only). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Johnson* at ¶ 50. "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Emphasis sic.) Id. at ¶ 51.

{¶ 58} Appellee argues that under a subjective analysis, the kidnapping and aggravated-robbery offenses pertaining to Raheem and Paris do not merge. It relies on *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, syllabus, a case predating *Rance* and applying a subjective review to the merger issue. In *Logan*, the court held that when a kidnapping is merely incidental to another underlying crime, there exists no separate animus sufficient to sustain separate convictions. Id. On the other hand, when the kidnapping "subjects the victim to a substantial increase in risk of harm separate and apart from" the other underlying crime, a separate animus exists for each offense sufficient to support separate convictions. Id. Likewise, when, in a kidnapping, "the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense,

there exists a separate animus as to each offense sufficient to support separate convictions." Id.

{¶ 59} Relying on *Logan*, appellee argues that merger does not apply to the kidnapping and aggravated-robbery offenses pertaining to Raheem and Paris because appellant forced them into prolonged restraint, moved them to a common area of the home, and threatened to harm them if they did not cooperate. The restraint, however, lasted no longer than the time it took for the commission of the aggravated robbery. Nor was appellant's movement of the victims to a common area of the home "substantial so as to demonstrate significance independent of" the aggravated robbery. See *Logan* at syllabus. See also *State v. Williams*, 10th Dist. No. 02AP–35, 2002-Ohio-4503, 2002 WL 2005815, ¶ 76–77 (concluding that a defendant's kidnapping offense was incidental to, and merged with, an underlying offense when the defendant took the victim from the bathroom to the living room before committing the underlying offense). The threat appellant made to Raheem and Paris also occurred to facilitate the aggravated robbery and did not escalate in a manner that substantially increased the risk of harm to those victims separate and apart from the aggravated robbery.

{¶ 60} Therefore, analyzing appellant's conduct under *Logan* establishes that the kidnapping of Raheem and Paris was incidental to the aggravated robbery. In fact, the court in *Johnson* has indicated that "the commission of an aggravated robbery * * * would also constitute a kidnapping" when, as here, " 'a weapon that has been shown * * * during the commission of a theft offense * * * forcibly restrain[ed] the liberty of another.' " Id. at ¶ 52, quoting *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, ¶ 21.

{¶ 61} In the final analysis, the kidnapping against Raheem and Paris was merely incidental to, and stemmed from the same conduct as, the aggravated robbery. Consequently, the trial court committed plain error by failing to merge (1) the kidnapping offense pertaining to Paris with the aggravated robbery offense pertaining to that victim and (2) the kidnapping offense pertaining to Raheem with the aggravated robbery offense pertaining to that victim. Thus, we sustain appellant's seventh assignment of error.

{¶ 62} In his eighth assignment of error, appellant argues that his defense counsel rendered ineffective assistance. The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 ("*Strickland II* "). First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant

establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

{¶ 63} Appellant contends that his defense counsel rendered ineffective assistance for not objecting to the admission of Raheem's bindover-hearing testimony. We have already concluded that the trial court did not err by admitting that testimony into evidence, however. Thus, appellant's defense counsel was not deficient for failing to object to the testimony. *State v. Ford,* 10th Dist. No. 07AP–803, 2008-Ohio-4373, 2008 WL 3970913, ¶ 72 (noting that counsel is not ineffective for failing to raise nonmeritorious claims).

 {¶ 64} Next, appellant argues that his defense counsel was ineffective for (1) not including his mother on the witness list, (2) not raising the application of Evid.R. 406 to Alieu's testimony, and (3) not objecting to the trial court allowing evidence and argument from the prosecutor implying appellant's involvement in a gang. Appellant cannot demonstrate ineffective assistance of counsel from these matters because, as we have already concluded, he was not prejudiced by them. See *Strickland II* at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (stating that a defendant claiming ineffective assistance of counsel must show that his defense was prejudiced).

{¶ 65} Lastly, appellant asserts that his defense counsel was ineffective for not objecting to the trial court's failure to merge (1) the kidnapping offense pertaining to Paris with the aggravated-robbery offense pertaining to that victim and (2) the kidnapping offense pertaining to Raheem with the aggravated-robbery offense pertaining to that victim. The trial court's error in not merging those offenses must be corrected on remand, based on our disposition of appellant's seventh assignment of error. Therefore, the issue whether appellant's defense counsel was ineffective for not objecting to the error is moot, and we need not address it. See App.R. 12(A)(1)(c). For all these reasons, we overrule in part and render moot in part appellant's eighth assignment of error.

 {¶ 66} Appellant argues in his ninth assignment of error that we must reverse his conviction due to the cumulative effect of trial errors. "[A] conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner* (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623. But there " 'can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.' " *State v. Hill* (1996), 75 Ohio St.3d 195, 212, 661 N.E.2d 1068, quoting *United States v. Hasting* (1983), 461 U.S. 499, 508–509, 103 S.Ct.

1974, 1980, 76 L.Ed.2d 96. "[E]rrors cannot become prejudicial by sheer weight of numbers." *Hill* at 212, quoting *State v. Davis* (1991), 62 Ohio St.3d 326, 348, 581 N.E.2d 1362.

{¶ 67} We have concluded that the trial court committed prejudicial error by not merging the aggravated-robbery and kidnapping offenses pertaining to Paris and Raheem. Upon considering any other errors from the trial court, cumulatively, we find no prejudice to appellant given that his conviction is sufficiently based on corroborating evidence from multiple witnesses implicating him in the October 2008 home invasion. Consequently, we overrule appellant's ninth assignment of error.

{¶ 68} To conclude, appellant's seventh assignment of error is sustained and his eighth assignment of error is overruled in part and rendered moot in part. We also overrule appellant's first, second, third, fourth, fifth, sixth, and ninth assignments of error. Therefore, we reverse in part, and affirm in part, the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

Brown and Connor, JJ., concur.