[Cite as *State v. Partin*, 2013-Ohio-2858.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                :

    Plaintiff-Appellee,                      :                    CASE NO.   CA2012-09-189

    - vs -                                          :                    O P I N I O N
                                                                               7/1/2013

                                                 :

JOHN EDWARD PARTIN,                  :

    Defendant-Appellant.                  :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2011-12-2100


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant


**PIPER, J.**

{¶ 1}  Defendant-appellant, John Edward Partin, appeals his convictions and sentence in the Butler County Court of Common Pleas for single counts of having weapons under disability and obstructing official business.

{¶ 2}  In the early morning hours of December 10, 2011, the Hamilton, Ohio 911 call center received several complaints about shots being fired in a residential neighborhood. One such call was made by Ferdinand Sneed, who stated that he heard and saw an

individual in his neighbor's house shooting a gun. Sneed gave the 911 dispatcher his information, and directed police to the house in back of his own. Hamilton police responded to the area, and also saw and heard gunfire coming from the house of Sneed's neighbor. Hamilton police surrounded the house and directed the occupants of the house to exit. Partin, who had been inside the house, came out the front door, but went back into the house when police ordered him to show his hands and walk toward the officers. Partin and the other individuals inside the home refused to exit, and stayed inside for approximately two hours.

{¶ 3} Hamilton police cordoned off the neighborhood until the SWAT team appeared on the scene. After SWAT's arrival, Partin and the other occupants exited the house and were arrested. Upon questioning, Partin denied having heard or seen any gun fire, and claimed that he was not aware that police were surrounding the house until he exited once SWAT was on the scene. Police conducted a gunshot residue test and determined that Partin's test was positive for the existence of gunshot residue on his hands.

{¶ 4} Partin was indicted for single counts of having weapons while under disability and obstructing official business. The having weapons while under disability charge was predicated upon Partin's past adjudication as a juvenile delinquent for having committed felonious assault on a police officer. Partin pled not-guilty to his current charges, and the matter proceeded to a two-day jury trial.

{¶ 5} During the state's case-in-chief, Sneed testified that on the night of the incident, he was preparing for bed when he heard shots being fired and saw "a gentleman firing a firearm out of his—out of the kitchen window." Sneed then testified that the kitchen light was on in his neighbor's house and that he could see that "two gentlemen, one being the defendant and then another gentleman who was standing slightly, a little back and to his side" were in the location where the shots had just been fired. Sneed then made an in-court

identification of Partin as the man he saw shooting the gun in the kitchen on the night of the incident. When asked where exactly he saw Partin that night, Sneed stated, "standing inside the window with a little bit of his body and his arm hanging out the window firing the firearm." The state also asked Sneed to explain how he was able to differentiate between the two gentlemen to know that it was Partin that fired the gun. Sneed testified, "most of it was body size. The other gentleman's quite a bit skinnier. Not too much shorter, but quite a bit skinnier." Sneed also testified that he had seen a "red emblem" on the shooter's shirt that night, and that he told police about the emblem when they took his statement.

{¶ 6} On cross-examination, defense counsel asked Sneed to read a portion of his police statement, which stated "I could not make out faces. They both had short hair and looked scruffy, but I could not make out features. I called 911."[1] Defense counsel then asked Sneed whether he had seen a photograph of Partin after he made his statement, and Sneed confirmed that he had been shown photographs of the individuals who were in the house by a police officer. At that point, defense counsel requested a bar conference, and moved the trial court for a mistrial because the state had not divulged during discovery that Sneed was shown photographs of the individuals who were in the house on the night of the incident.

{¶ 7} The trial court, outside the presence of the jury, considered Partin's motion for a mistrial. The state explained that police never told the state about the use of photographs, and that the prosecutor had no idea that Sneed was shown photographs prior to his identification of Partin as the shooter. The trial court then held a hearing, during which the officer who showed the photographs to Sneed was called as a witness and questioned.

---

1. Sneed's statement was not admitted as an exhibit. Nor, have the parties made the statement a part of the appellate record. The only reference to Sneed's statement in the record is this excerpt read by Sneed during trial.

Detective James Calhoun testified that he took Sneed's statement soon after the incident, and confirmed that during that time, he showed Sneed photographs of the individuals from the house. The photographs shown to Sneed had been taken by Detective Calhoun soon after the standoff ended, and once the individuals had been secured at the police station.

{¶ 8} Detective Calhoun testified that he only showed the photographs so that Sneed could identify the emblem on the shirt worn by the shooter. Detective Calhoun testified that because Sneed had told him that he was unable to identify faces, the photographs were being shown "just to see if the logo that he was describing was the one on the shirt." Detective Calhoun stated that he did not ask Sneed to identify the shooter's face, only the logo from the shirt the shooter was wearing. Therefore, Detective Calhoun did not consider the showing of photographs to Sneed to be a photographic line-up that needed to be shared with the prosecutor.

{¶ 9} On cross-examination, Detective Calhoun admitted that he had not used a blind administrator to help show the photographs to Sneed, did not include any photographs of non-suspects, and that he did not put the pictures in any type of folder before showing them to Sneed. Defense counsel then argued to the trial court that the photographic identification process used by Detective Calhoun was in violation of Ohio's statute that sets forth proper identification procedures.

{¶ 10} The trial court overruled the motion for a mistrial, and instead gave defense counsel the opportunity to call Detective Calhoun in the presence of the jury so that the jury could hear more details specific as to how Sneed was able to identify Partin as the shooter. Defense counsel declined to call Detective Calhoun, and did not otherwise request a continuance or a separate hearing on a motion to suppress Sneed's identification, and instead continued with the trial after noting his objection to the trial court's ruling.

{¶ 11} The jury found Partin guilty of both counts, and the trial court sentenced Partin to five years of community control on the having weapons while under disability charge, and a 90-day suspended sentence for the obstructing official business charge. Partin now appeals his convictions and sentence, raising the following assignments of error. For ease of discussion, we will combine Partin's second and third assignments of error, as they are interrelated.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR A MISTRIAL.

{¶ 14} Partin argues in his first assignment of error that the trial court abused its discretion when it denied his motion for a mistrial.

{¶ 15} "A mistrial should not be ordered merely because of some error or irregularity at trial." *State v. Sidibeh*, 192 Ohio App.3d 256, 270, 2011-Ohio-712, ¶ 44 (10th Dist.). Instead, "mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Garner,* 74 Ohio St.3d 49, 59 (1995). A trial court's decision to deny a motion for a mistrial is within the sound discretion of the trial court. *State v. Gilbert*, 12th Dist. No. CA2010-09-240, 2011-Ohio-4340, ¶ 83. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Barnes,* 94 Ohio St.3d 21, 23 (2002). "An appellate court will not disturb the exercise of this discretion absent a showing that the accused has suffered material prejudice." *State v. Blankenship*, 102 Ohio App.3d 534, 549 (12th Dist.1995).

{¶ 16} After reviewing the record, we conclude Partin was not denied a fair trial and did not suffer material prejudice, thus the trial court did not abuse its discretion by denying Partin's motion for a mistrial.

{¶ 17} The record reveals that Partin was aware that Sneed had identified him as the shooter, and that Sneed was going to make an in-court identification of Partin as the shooter. During the state's opening argument, the prosecutor stated,"Mr. Sneed will tell you that he's able to identify that defendant as being the one that he saw shooting that gun out of the that window. That's what brings us here today." Sneed then made the in-court identification that Partin knew would occur. While Partin may not have known *how* Sneed was able to identify him, there is no indication on the record that Partin was surprised or otherwise prejudiced by an in-court identification.

{¶ 18} While the police most assuredly should have shared the information with the state that Sneed's identification of Partin as the shooter came after he was shown photographs of the suspects, we refuse to find that a mistrial was warranted. Partin, knowing that Sneed was going to and did identify him in court, cross-examined Sneed with the statement that Sneed gave the police regarding his inability to distinguish faces on the night of the incident. The jury, therefore, was made aware of the fact that only hours after the incident, Sneed told police that he was unable to identify the shooter by his face and was only able to identify the emblem on the shooter's shirt. Defense counsel declined to call Detective Calhoun, even though doing so would have drawn out further testimony that Sneed was unable to identify Partin's face, and that Sneed only made the identification after seeing the photographs of the suspects. Nonetheless, and despite Detective Calhoun not testifying during Partin's defense, the jury was aware of the circumstances of Sneed's identification of Partin and of Sneed's statement to police in which he clearly indicated that he could not make out faces on the night of the incident.

{¶ 19} Moreover, Partin was not deprived a fair trial, nor did he suffer material prejudice, because there was other evidence introduced at trial that supported Sneed's identification of Partin as the shooter. Sneed testified that he was able to identify which

person shot the gun because of the difference in body type between the two men who had been standing next to each other. "Most of it was body size. The other gentleman's quite a bit skinnier. Not too much shorter, but quite a bit skinnier." The size of the men's bodies was something that Sneed observed the night of the incident, and was not predicated upon seeing the photographs. In fact, Sneed never attempted to indicate that his identification was based upon having seen Partin's face during the actual shooting. Nor was there testimony indicating Sneed was only able to make an in-court identification due to viewing the photographs. Instead, Sneed's testimony was consistent with his statement to police that he was unable to identify the shooter's face, and remained consistent at trial when he explained that he was able to distinguish the shooter from the non-shooter based on the difference in their body size, as well as large emblem on the shooter's shirt. Sneed never changed his story to claim that he could make an identification based upon having seen the shooter's face.

**{¶ 20}** The jury was free to infer that Sneed's identification was due little weight because he never saw the shooter's face, and was not basing the identification on having seen Partin's face. However, the jury could have also given great weight to Sneed's testimony regarding the large red emblem on Partin's shirt, as well as the difference in body types between Partin and the other person who was standing near him on the night of the incident.[2] The jury was shown the same photographs that Sneed was shown when he gave his statement, and could have deduced from those photographs that Partin is the only individual from the house who had a large red emblem on his shirt, and was larger than any

---

2. Partin has not pointed to any evidence produced at trial or at the mistrial hearing to suggest that Sneed's in-court identification was not the result of his independent recollection of seeing Partin's body build and shirt emblem the night of the shooting. Choosing not to further cross-examine Sneed or have Detective Calhoun testify about showing Sneed the photographs was obvious trial strategy because it would have further developed the way in which Sneed identified Partin in court. Instead, defense counsel chose to rely upon the apparent contradictory statement given by Sneed, which was not an unreasonable strategy.

of the other men in the house on the night of the incident. Given this other evidence leading to identification, we refuse to find that Partin was materially prejudiced or denied a fair trial.

{¶ 21} Nor can we say that a mistrial was the proper means for addressing Detective Calhoun's mistake.[3] Detective Calhoun admitted during his testimony that, in hind sight, he should have informed the state of his showing the photographs to Sneed. Had he done so, the state could have shared that information with Partin during discovery. However, as we have previously discussed, a mistrial should not be ordered merely because of some error or irregularity at trial, especially where that error could be rectified through several possible curative measures.

{¶ 22} As recently stated by the Ohio Supreme Court, parties to a trial should make an attempt to complete the trial procedure in the event of some discovery error without the trial court employing the strictest remedy available. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966. In *Darmond*, the court noted that "a continuance should be ordered if it is feasible and would allow for an opportunity to minimize any surprise or prejudice caused by the discovery violation." *Id.* at ¶ 40.

{¶ 23} The error that occurred at Partin's trial could have been cured by means other than a mistrial, such as moving for a hearing on a motion to suppress, requesting a

---

3. While not applicable to the facts of this case, we are nonetheless cognizant that the law does not require the imposition of the harshest penalty possible should an officer make a mistake during an investigation. Instead, courts are permitted to consider whether an officer had a "good faith" basis for his actions. The policy inherent in the good faith exception is also pertinent to the case at bar because there is no indication in the record that Detective Calhoun deliberately acted in a manner to conceal the fact that he showed Sneed the photographs. Instead, his testimony at the hearing indicated his honest and reasonable belief that the photographs were only shown to Sneed so that Sneed could identify the emblem he saw on the shirt of the shooter that night. "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. * * * But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful * * * or when their conduct involves only simply 'isolated' negligence * * * the 'deterrence rationale loses much of its force' and exclusion cannot 'pay its way.'" *State v. Widmer*, 12th Dist. No. CA2011-03-027, 2012-Ohio-4342, ¶ 55, quoting *Davis v. United States*, 131 S.Ct. 2419, 2427-28 (2011).

continuance to evaluate trial strategy, the development of additional testimony, or some other curative measure.[4]

{¶ 24} For example, the Tenth District Court of Appeals discussed how a continuance and a reevaluation of defense strategy can cure an improper photographic lineup procedure. *State v. Sidibeh*, 192 Ohio App.3d 256, 271, 2011-Ohio-712 (10th Dist.). In *Sidibeh*, the prosecutor made reference in its opening statement to a photographic array that was not produced to the defense during discovery. The trial court ordered that the jurors were not to consider the photographic array or the state's reference to it, but did not otherwise exclude the witness' testimony regarding her in-court identification of the appellant based upon the photograph array. In affirming the trial court's denial of Sidibeh's motion for a mistrial, the court stated,

> although the court did not strike [the witness'] in-court identification of appellant, it granted appellant a continuance to allow him time to readjust his defense due to the newly discovered information. This remedy proved to be sufficient because, during the cross-examination of [the witness] and closing argument, defense counsel was able to challenge [the witness] on her identification of appellant as a perpetrator. Specifically, he suggested that [the witness'] identification was based not on her recognizing appellant from the home invasion, but on her seeing a photograph of appellant on a social-networking website and seeing him in juvenile court.

*Id.* at ¶ 46.

{¶ 25} Partin did not move for any of the curative measures mentioned in *Sidebeh*, did not employ the curative measure suggested by the trial court, and did not pursue measures that were available to him upon request. Partin decided instead, to proceed with trial and assumedly argue on appeal that mistrial was the only remedy available. There is no indication in the record that the trial court would not have considered Partin's request for a

---

4. However, even if those less harsh remedies had been requested, we see no evidence suggesting that a different result would have occurred.

continuance or some other remedy, especially where the trial court, itself, suggested calling Detective Calhoun to expose the jury to the details of Sneed's initial statement and subsequent identification. Again, even with consideration of other remedies, we do not perceive a different outcome. The fact that defense counsel declined to pursue curative measures, however, did not entitle Partin to a mistrial, and the trial court did not abuse its discretion in denying Partin's motion. Therefore, Partin's first assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT PROVIDED A JURY INSTRUCTION THAT INCLUDED AN INCORRECT AND MISLEADING STATEMENT OF LAW.

{¶ 28} Assignment of Error No. 3:

{¶ 29} APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, WHICH DENIAL RESULTED IN PREJUDICE.

{¶ 30} Partin argues in his second and third assignments of error that the trial court gave an erroneous jury instruction, and that he received ineffective assistance of counsel because his trial counsel failed to object to the jury instruction.

{¶ 31} As referenced, Partin's trial counsel did not object to the jury instructions. Therefore, we will review the instructions for plain error. According to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, "[a]n alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. * * * Notice of plain error must be taken with utmost caution, under exceptional circumstances and

only to prevent a manifest miscarriage of justice." *State v. Baldev,* 12th Dist. No. CA2004-05-106, 2005-Ohio-2369, ¶ 12.

{¶ 32} A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless "it is clear that the jury instructions constituted prejudicial error." *State v. Brown*, 12th Dist. No. CA2008-12-049, 2009-Ohio-3933, ¶ 6, citing *State v. Adams*, 62 Ohio St.2d 151, 154 (1980). In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. *State v. Harry,* 12th Dist. No. CA2008-01-013, 2008-Ohio-6380, ¶ 36, citing *State v. Van Gundy,* 64 Ohio St.3d 230, 233-34(1992). A jury instruction constitutes prejudicial error where it results in a manifest miscarriage of justice. *State v. Hancock,* 12th Dist. No. CA2007-03-042, 2008-Ohio-5419, ¶ 13.

{¶ 33} Partin argues that the trial court erred in instructing the jury on the having weapons while under disability charge. Partin specifically challenges the trial court's instruction as to how the jury was directed to use evidence that Partin had been previously adjudicated a delinquent child for having committed felonious assault against a police officer, the predicating conviction for why Partin was forbidden from having weapons.

{¶ 34} According to R.C. 2923.13,

> (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence

Based upon Partin's adjudication, he was prohibited from having, carrying, or using a firearm. Once Partin was identified as the shooter, he was charged with having weapons under

disability.

{¶ 35} The trial court admitted the juvenile court's judgment entry regarding Partin's adjudication for the felonious assault charge. The trial court gave the following jury instructions regarding how the jury was to use evidence of the adjudication.

> Evidence was received about the commission of a crime other than the offenses with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity with that character. If you find that the evidence of other crime[s] is true and that the defendant committed it, you may consider that evidence only for the purpose of deciding the identity of the person who committed the offense in this trial. That evidence cannot be considered for any other purpose.

Partin now argues that this jury instruction was erroneous and was plain error because the jury instruction advised the jury to consider Partin's prior adjudication when "deciding the identity of the person who committed the offense in this trial."

{¶ 36} Partin argues that identification was a major issue at trial, and that the jury was confused regarding identification because the jury asked to see a transcript of Sneed's testimony, as well as the statement he gave to police after the incident occurred. Based upon the jury's questions, Partin asserts that the jury was confused regarding Sneed's identification of Partin as the shooter and that the jury instruction exacerbated the jury's confusion by stating that Partin's conviction was to be used to decide the "identity of the person who committed the offense in this trial." We agree with Partin that the instruction was not stated as clearly as it could have been and was inartfully conveyed. However, after considering the jury instructions as a whole, we cannot say that the instructions constituted plain error.

{¶ 37} While the jury's questions possibly suggest that jurors may have been debating Sneed's identification of Partin as the shooter on the night of the incident, the questions do

not indicate that the confusion the jury may have felt was specific to the trial court's jury instruction regarding how to use the *prior adjudication*.[5] The identity question posed to the jurors was whether Partin was the shooter on the night of the incident. That identity question was a wholly separate question than what Partin *assumes* the jury grappled with: whether Partin could be identified as the shooter *based upon his prior adjudication*. None of the jury's questions regarding identity were related to Partin's prior conviction, or associated with the wording of the jury instruction regarding how to use evidence of the prior adjudication. Instead, the instructions specifically advised the jurors that they were not to consider Partin's prior adjudication as proof that he was the shooter on the night of the incident or as proof that Partin acted on the night of the incident in conformity with his prior conduct.

{¶ 38} While the second part of the jury instruction could have been aimed at consideration of Partin's legal disability and should not have included reference to the "identity" of the person who committed this offense, the fact remains that the trial court specifically told the jury not to use the evidence for any other purpose except to determine whether Partin had previously been adjudicated and was therefore forbidden from having or using firearms. *See State v. Ross*, 135 Ohio App.3d 262, 277 (12th Dist.1999) (finding jury instructions proper where "the charge clearly informed the jury that it could not consider appellant's prior conviction as proof that he acted in conformity with character. The jury is presumed to have followed the instructions given unless appellant can demonstrate otherwise"). Given the clarity of the trial court's admonition of how the jurors could *not* use the evidence of Partin's prior adjudication, coupled with the fact that the jury is presumed to

---

5. The jury's questions, if anything, demonstrate that it did not rely upon Partin's prior adjudication to establish that Partin was the shooter on the night of the incident because if it had, there would have been no need for the jury to debate or inquire further regarding Sneed's testimony. The jury properly weighed the evidence, and did not improperly rely on evidence of Partin's prior adjudication.

have followed those instructions, we find that the jury instructions did not constitute reversible error.

{¶ 39} Regarding ineffective assistance of counsel, an appellant must establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Myers,* 12th Dist. No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052 (1984). Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." *Strickland,* 466 U.S at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 40} While the jury instructions were not artfully crafted, we will not presume a misapplication of the instructions by the jury. All indications are that even if the instructions had been more precisely drafted, the exact same results would have been reached. Partin cannot demonstrate that his trial counsel's performance was deficient or that his counsel's failure to object to the jury instructions prejudiced the defense to the point of depriving him of a fair trial. Therefore, Partin's second and third assignments of error are overruled.

{¶ 41} Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.