[Cite as *State v. Thacker*, 2020-Ohio-1318.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-06-058 |
| | : | O P I N I O N |
| - vs - | | 4/6/2020 |
| | : | |
| WILLIAM R. THACKER, JR., | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34395

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Timothy J. McKenna, 125 East Court Street, Suite 950, Cincinnati, Ohio, 45202, for appellant

**HENDRICKSON, P.J.**

{¶ 1}   Appellant, William R. Thacker, Jr., appeals from his conviction in the Warren County Court of Common Pleas for violating a protection order.  For the reasons set forth below, we affirm his conviction.

{¶ 2}   Appellant and his estranged wife, Trese Thacker, have been married since 1997, and they have two children together:  21-year-old Emma and 17-year old Brett.  On

October 6, 2017, Trese obtained a domestic violence civil protection order against appellant, and then subsequently instituted divorce proceedings. The protection order, which was effective for one year, was served on appellant on October 7, 2017.

{¶ 3} The protection order required appellant to vacate the family home and surrender possession of a 2016 Mazda CX5 to Trese. The protection order further prohibited appellant from initiating or having any contact with Trese, Emma, or Brett and provided that appellant was not to be present within 100 yards of his wife or children or be at any place appellant knew, or should have known, his wife and children were likely to be. The protection order specifically provided that "[i]if [appellant] accidentally comes in contact with protected persons in any public or private place, [appellant] must depart *immediately*. This Order includes encounters on public and private roads, highways, and thoroughfares." (Emphasis sic.).

{¶ 4} Prior to the incident at issue, appellant was previously convicted of violating the protection order. Subsequently, around 4:00 p.m. on May 17, 2018, while the protection order was still in place, appellant had contact with Trese and Brett as Trese attempted to drive Brett home from school. During Trese's short drive through Mason, Ohio, appellant encountered Trese's vehicle three times, and each time appellant put his arm out the open window of his vehicle, flipped off Trese, and screamed "fuck you." Two of the incidents were recorded on Trese's cellphone.

{¶ 5} A complaint charging appellant with violating a protection order was filed in the Mason Municipal Court on June 7, 2018. Appellant was arrested on that date and held in jail until June 11, 2018, when he was released on bond and placed on electronically monitored house arrest. Thereafter, the matter was bound over to the Warren County Grand Jury.

{¶ 6} On July 16, 2018, appellant was indicted on one count of menacing by stalking

- 2 -

in violation of R.C. 2903.211(A)(1), a misdemeanor of the first degree, and one count of violating a protection order in violation of R.C. 2919.27(A)(1), a felony of the fifth degree as appellant had a prior conviction for violating a protection order. A not guilty plea was entered on behalf of appellant and his bond was revoked by the court on August 2, 2018.

{¶ 7} On August 3, 2018, a notice of appearance of counsel was filed on behalf of appellant. Counsel subsequently withdrew on August 17, 2018. Thereafter, pretrial proceedings were continued as appellant sought to obtain counsel. On September 13, 2018, counsel was appointed for appellant. On this date, the court also set forth an "Entry and Order Extending Speedy Trial Provisions," finding there was good cause to extend the statutory and constitutional speedy trial limitations because of appellant's inability to retain counsel.

{¶ 8} On September 21, 2018, appellant's counsel filed a demand for discovery and a request for a bill of particulars. Then, on October 9, 2018, defense counsel filed suggestion of incompetency and a plea of not guilty by reason of insanity ("NGRI plea") and asked the trial court to order an evaluation of appellant's mental condition at the time of the offense and of his current competency to stand trial. On October 18, 2018, while the competency motion remained pending, defense counsel filed a motion to dismiss the charges brought against appellant on the basis that appellant's statutory and constitutional speedy trial rights had been violated by the delay in prosecution.

{¶ 9} The trial court denied appellant's motion to dismiss for lack of speedy trial on October 26, 2018, finding that speedy trial limitations had been expanded by its September 13, 2018 order. The court further noted that the initial delay in case proceedings was the result of appellant's failure to obtain counsel, which tolled the speedy trial timeframe.

{¶ 10} On October 25, 2018, the trial court granted appellant's request for a competency evaluation. Thereafter, the parties stipulated to the findings in the

psychologist's report and, on November 29, 2018, the trial court found appellant incompetent to stand trial. Appellant was sent to Summit Behavioral Health for treatment.

{¶ 11} On March 18, 2019, following stipulations by the parties, the trial court found appellant competent to stand trial. Defense counsel moved to withdraw the NGRI plea on March 22, 2019. At a motion and pretrial hearing held on May 10, 2019, defense counsel orally moved to renew the motion to dismiss, contending that appellant's statutory and constitutional speedy trial rights had been violated. In an entry dated May 10, 2019, the trial court denied the motion to dismiss but granted appellant's request to withdraw his NGRI plea.

{¶ 12} The matter proceeded to a jury trial on May 23, 2019. At this time, the state nolled the menacing by stalking charge and appellant stipulated that he had a prior conviction for violating a protection order. The state called Trese, Brett, and Mason Police Officer Stephanie Neal as witnesses.

{¶ 13} Trese testified that the protection order she had against appellant was in effect on May 17, 2018, when she encountered appellant on a public road in Mason, Ohio. She explained that after picking Brett up from school, the two were on their way home in her Mazda CX5 when they encountered appellant at the intersection of Mason Montgomery Road and Main Street. Trese was stopped in the left turn lane of Mason Montgomery Road, seeking to turn onto Main street. Appellant was driving straight on Main Street in his white Yukon Denali SUV. The two vehicles were about 25 feet away from one another, and both Trese and Brett were able to identify appellant as the driver of the Denali.

{¶ 14} As appellant drove through the intersection, he appeared very angry, and he put his arm out the open window of his vehicle, flipped off Trese, and screamed "fuck you." Appellant then pulled his vehicle over a couple of buildings down from the intersection. Trese, recognizing that after turning left she would be driving past appellant's pulled-over

vehicle, asked Brett to record what happened as she drove by appellant. She explained, "I was going to have to go past him. * * * I knew he was really angry and I wasn't sure what he would do, so, my son started to record because he knew we were going to have [to] go by." According to Trese, appellant's actions over the prior year "had been not his normal behavior and we weren't sure if he would do something weird or dangerous or whatever. So we recorded it just in case."

{¶ 15} When Trese turned left onto Main Street, she had to drive by appellant's stopped vehicle. Trese did not slow down, call out to appellant, or make a gesture towards appellant as she drove past him. Brett also did not make a gesture or call out towards appellant. Appellant, however, flipped off Trese as she drove by him. Appellant's actions were recorded by Brett.

{¶ 16} As Trese continued to drive towards her home, she instructed Brett to "keep the video out" because she believed it was likely that they would again encounter appellant on their path home. Trese's beliefs were correct. As she turned right onto Mason Road, appellant made an aggressive turn from Church Street onto Mason Road in order to pass by Trese's vehicle another time. Appellant hung out his open window and once again flipped Trese off while screaming "fuck you." This encounter was also recorded by Brett on Trese's cellphone.

{¶ 17} Once Trese arrived home, she contacted her lawyer and explained what had occurred. On her lawyer's advice, Trese immediately called the police and reported appellant's actions to Officer Patrick Witte. Days later, on May 26, 2017, Trese spoke with Officer Neal about the incident. After this phone call, Trese provided the police with the cellphone footage of appellant's conduct.

{¶ 18} When cross-examined at trial, Trese and Brett both admitted that they had not felt fear from appellant's actions on May 17, 2018. Trese also admitted that she believed

- 5 -

her initial encounter with appellant at the intersection of Mason Montgomery Road and Main Street had been a "completely accidental meeting." Trese denied that her purpose in reporting appellant's actions to the police was to gain an advantage in her divorce proceedings with appellant.

{¶ 19} Following the state's presentation of its case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion, and appellant rested his defense without calling any witnesses. The case was submitted to the jury, who found appellant guilty of violating a protection order and further found that appellant had a prior conviction for violating a protection order. Appellant was sentenced to three years of community control and ordered to serve 365 days in the county jail, with credit for 300 days.

{¶ 20} Appellant timely appealed his conviction, raising four assignments of error. For ease of discussion, we will address his third and fourth assignments of error together.

{¶ 21} Assignment of Error No. 1:

{¶ 22} THE COURT ERRED BY DENYING THE DEFENDANT HIS RIGHT TO [A] SPEEDY TRIAL.

{¶ 23} In his first assignment of error, appellant argues his statutory and constitutional speedy trial rights were violated by the state's delay in bringing him to trial.

{¶ 24} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I the Ohio Constitution. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 32; *State v. Miller*, 12th Dist. Warren No. CA2009-01-008, 2009-Ohio-4831, ¶ 8. "[T]he General Assembly * * * enacted Ohio's speedy-trial statutes to preserve this right." *Id.*, citing R.C. 2945.71, et seq. Compliance with these statutes is mandatory and the statutes "must be strictly construed against the state." *Id.*, citing *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, 2009-Ohio-928, ¶ 12.

- 6 -

{¶ 25} R.C. 2945.73(B) provides that "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." When an accused is charged with a felony, he must be brought to trial within 270 days after the date of his arrest. R.C. 2945.71(C)(2). When an accused is held in jail on the pending charge in lieu of bail, each day is counted as three days. R.C. 2945.71(E).

{¶ 26} Once a defendant demonstrates he was not brought to trial within the permissible time period, the accused presents a prima facie case for dismissal based on a speedy-trial violation. *Miller*, 2009-Ohio-4831 at ¶ 9, citing *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, ¶ 10 (3d Dist.). The burden then shifts to the state to prove that time was sufficiently tolled and the speedy-trial time period extended. *Id.*

{¶ 27} "Upon review of a speedy-trial issue, a court is required to count the days of delay chargeable to either side and determine whether the case was tried within the applicable time limits." *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 8. R.C. 2945.72 enumerates specific instances in which the time period that a defendant must be brought to trial is extended and includes periods of delay caused by an accused's lack of counsel, periods of time in which the accused is mentally incompetent to stand trial or his competency to stand trial is being determined, periods of continuance caused by an accused's own motion, and "the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(B), (C), (E) and (H).

{¶ 28} Appellate review of speedy-trial issues involves a mixed question of law and fact. *State v. Messer*, 12th Dist. Clermont No. CA2006-10-084, 2007-Ohio-5899, ¶ 7. An appellate court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence, but must independently review whether the trial court correctly applied the law to the facts of the case. *Id.*

{¶ 29} Between appellant's date of arrest and the date he was tried, 350 days had elapsed – which is well outside the 270-day timeframe provided by R.C. 2945.71(C)(2). However, certain portions of this time period were tolled and the time chargeable to appellant.

{¶ 30} Appellant spent four days in jail, between June 7, 2018 and June 11, 2018, before being released on bond.[1] These four days count for 12 days, pursuant to the triple-count provision of R.C. 2945.71(E). Appellant was then out on bond from June 12, 2018 until August 2, 2018, for a total of 51 days. These 63 days are chargeable to the state.

{¶ 31} After his bond was revoked on August 2, 2018, appellant remained in jail awaiting trial. However, not all the time appellant remained jailed is chargeable to the state. While jailed from August 2, 2018 until August 16, 2018, appellant was represented by counsel. These 15 days are triple counted pursuant to R.C. 2945.71(E), and the 45 days are chargeable to the state.

{¶ 32} On August 17, 2018, appellant's counsel withdrew. At a subsequent pretrial hearing, appellant indicated he wanted to retain new counsel and represented that he had the funds to do so. The court continued proceedings to allow this to occur. Despite appellant's representations, he was unable to retain counsel. Therefore, on September 13, 2018, the trial court appointed counsel to represent appellant. We find that the time between August 17, 2018 and September 12, 2018 was properly tolled pursuant to R.C. 2945.72(C), which provides that the time in which an accused must be brought to trial may be extended by "[a]ny period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to

---

1. As we have previously observed, the date of arrest itself is not included in the speedy-trial calculation. *State v. March*, 12th Dist. Butler No. CA2015-08-070, 2016-Ohio-3288, ¶ 10; *State v. Messer*, 12th Dist. Clermont No. CA2006-10-084, 2007-Ohio-5899, ¶ 12.

an indigent accused upon his request as required by law." *See State v. Binks*, 12th Dist. Butler No. CA2017-08-118, 2018-Ohio-1570, ¶ 30; *State v. Seward*, 4th Dist. Ross No. 04CA2784, 2005-Ohio-934, ¶ 16. Since appellant represented that he could afford to hire an attorney, this time is not chargeable to the state.

{¶ 33} After counsel was appointed for appellant, appointed counsel filed a Plea of Not Guilty by Reason of Insanity and a Suggestion of Incompetency, asking the court to order an evaluation of appellant's mental condition at the time the charged offenses were committed and of his competency to stand trial. This motion was filed on October 9, 2018. The time in which counsel was appointed, September 13, 2018, until the time in which counsel filed the suggestion of incompetency and NGRI plea, October 9, 2018, is chargeable to the state. As appellant was jailed, these 26 days are triple counted and 78 days are charged to the state.[2]

{¶ 34} Pursuant to R.C. 2945.72(B), time was tolled from October 9, 2018 until March 17, 2019 while the trial court determined appellant's competence to stand trial and while his competency was being restored. This time is not chargeable to the state. *State v. Spratz*, 58 Ohio St.2d 61, 64 (1979).

{¶ 35} By entry dated March 18, 2019, appellant was found competent to stand trial. The time from March 18, 2019 until March 22, 2019, the date appellant's counsel filed a motion to withdraw appellant's NGRI plea, is chargeable to the state. As appellant was

---

2. We note that on September 21, 2018, appellant's appointed counsel filed a demand for discovery and request for a bill of particulars. "A demand for discovery or a bill of particulars is a tolling event pursuant to R.C. 2945.72(E)." *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, syllabus. However, it is unclear from the record if, and when, the state filed a bill of particulars or when it responded to appellant's discovery request. These tolling events were not addressed by the trial court in its denial of appellant's motion to dismiss for lack of speedy trial. Although it certainly would have been beneficial to have information about the timing of the state's response to these events, we find that the lack of information about these events does not preclude us from analyzing appellant's speedy trial claims. For purposes of appellant's assigned error, we will not toll any time relating to the demand for discovery or request for bill of particulars. As discussed in the body of our opinion, even without tolling any time for these events, the state brought appellant to trial within the time frame allotted by R.C. 2945.71(C)(2).

jailed during this time frame, the days are triple counted, for a total of 12 days being charged to the state.

{¶ 36} Appellant's March 22, 2019 filing of a motion to withdraw his NGRI plea and have the case set for trial once again tolled the time in which he had to be brought to trial. R.C. 2945.72(E) extends the time an accused must be brought to trial for "[a]ny period of delay necessitated by * * * motion * * * made or instituted by the accused." Appellant's motion to withdraw his NGRI plea remained pending until May 10, 2019. On this date, the trial court issued an entry granting appellant's request to withdraw his NGRI plea. The entry also denied appellant's renewed motion to dismiss for violation of his speedy trial rights, which had been orally made that same day. As the time from March 22, 2019 to May 10, 2019 was tolled pursuant to R.C. 2945.72(E), this time is not charged to the state.

{¶ 37} Appellant's jury trial commenced on May 23, 2019. The time from May 10, 2019 to May 23, 2019 is charged to the state. As appellant was in jail during this time frame, the days are triple counted, for a total of 39 days charged to the state.

{¶ 38} Therefore, in summation, the following 237 days were chargeable to the state:

- 12 days (4 days triple counted) from June 7, 2018 to June 11, 2018

- 51 days from June 12, 2018 to August 1, 2018

- 45 days (15 days triple counted) from August 2, 2018 to August 16, 2018

- 78 days (26 days triple counted) from September 13, 2018 to October 8, 2018

- 12 days (4 days triple counted) from March 18, 2019 to March 21, 2019

- 39 days (13 days triple counted) from May 10, 2019 to May 22, 2019

As the state brought appellant to trial within the 270 days specified by R.C. 2945.71(C)(2), appellant's statutory speedy trial rights were not violated.

{¶ 39} As for appellant's constitutional speedy trial challenge, the United States

Supreme Court established a balancing test to determine whether a defendant has been deprived of his constitutional right to a speedy trial. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972). Under this balancing test, a court must consider the following four factors: (1) the length of the delay; (2) the reason the government assigns to justify the delay; (3) the defendant's responsibility to assert his right to a speedy trial; and (4) the prejudice to the defendant. *Id.* at 530-532; *State v. Triplett*, 78 Ohio St.3d 566, 568 (1997).

{¶ 40} "The first factor, the length of the delay, is a 'triggering mechanism,' determining the necessity of inquiry into the other factors." *Triplett* at 569. Unless there is some delay which is "presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* at 530. Courts generally find post-accusation delay to be "presumptively prejudicial" as it approaches one year. *Doggett v. United States*, 505 U.S. 647, 652, fn. 1, 112 S.Ct. 2686 (1992).

{¶ 41} In this case, the length of delay between appellant's arrest and the time he was brought to trial was 350 days. The fact that appellant was brought to trial within a year of his arrest can hardly allow the delay to be characterized as "presumptively prejudicial." *See Taylor*, 2002-Ohio-7017, ¶ 39 (finding delay not presumptively prejudicial where defendant brought to trial within one year); *State v. Terry*, 12th Dist. Fayette No. CA2001-07-012, 2002-Ohio-4378, ¶ 35 (finding delay was not presumptively prejudicial where trial commenced approximately one year after arrest). Appellant's constitutional rights were, therefore, not violated and consideration of the remaining *Barker* factors is not required. *See id.*

{¶ 42} However, even if we were to consider the remaining *Barker* factors, our resolution of this assignment of error would not change. Appellant was not denied his constitutional right to a speedy trial. Though appellant timely asserted his right to a speedy trial by filing his motion dismiss and then renewing said motion, the remaining *Barker* factors

weigh against him. The delay in bringing appellant to trial was less than a year after his arrest and was caused, in part, by his actions in failing to retain counsel, despite his repeated assurances that he had the ability and means to do so. Additional delays in bringing appellant to trial were attributable to defense counsel's request for evaluations of appellant's competency and mental condition at the time of the offense, to the court's determination that appellant was incompetent to stand trial, and to the time it took to restore appellant to competency. Appellant has not pointed to any wrongdoing or delay caused by the state. Additionally, appellant cannot demonstrate any prejudice that resulted from the delay in bringing him to trial approximately one year after his arrest. We therefore find no merit to his claim that his constitutional right to a speedy trial was violated.

{¶ 43} Accordingly, for the reasons expressed above, we find that the trial court did not err in denying appellant's motion to dismiss as neither his constitutional nor his statutory speedy trial rights were violated. His first assignment of error is, therefore, overruled.

{¶ 44} Assignment of Error No. 2:

{¶ 45} THE TRIAL COURT ERRED WHEN IT DENIED A MOTION FOR MISTRIAL AFTER DEFENSE COUNSEL WAS NOT PROVIDED WITH IMPORTANT EVIDENCE.

{¶ 46} In his second assignment of error, appellant argues the trial court erred by denying his request for a mistrial after it was discovered that a police report from Officer Witte was not included in the discovery materials appellant received from the state. Appellant contends that his defense was prejudiced by not having this report prior to trial as the report "would have changed [his] counsel's trial tactics and resulted in a not guilty finding by the jury."

{¶ 47} At trial, Officer Neal indicated she spoke with Trese on May 26, 2018, and during that conversation, Trese referenced a video recording of the May 17, 2018 roadway encounters she had with appellant. Officer Neal, unaware of what Trese was referring to,

accessed a report completed by Officer Witte on May 17, 2018, the date Trese reported the encounters. Defense counsel objected and, outside the presence of the jury, indicated that Officer Witte's report had not been provided by the state during discovery. The state, in turn, indicated that it was unaware of Officer Witte's report and stated that the report was not in its possession. Officer Neal provided a copy of the report to the court and to the parties. Officer Witte's report contained a description of the roadway encounters as well as a statement that "[Trese] advised she did not wish for any criminal charges to come from this incident, but rather for it just to be documented at the request of her lawyer. [Trese] was advised this incident would be forwarded to the prosecutor regarding charges. [Trese] advised she understood."

{¶ 48} After reviewing Officer Witte's report, defense counsel moved for mistrial, arguing that the report "would've been helpful to prepare for trial [and] to prepare for witnesses that ha[d] already testified." The trial court denied appellant's request for a mistrial, finding that the late discovery of the report had not resulted in substantial prejudice to appellant's defense.

{¶ 49} Appellant challenges the denial of his motion for a mistrial, contending that "[h]ad the jury been aware that [Trese] didn't even want to press charges and was doing so only at the advice of her divorce attorney, the jury would have realized this was simply a chance encounter on the roadway and not a reckless violation of the protection order."

{¶ 50} "A mistrial should not be ordered merely because of some error or irregularity at trial." *State v. Pichardo-Reyes*, 12th Dist. Butler No. CA2016-09-184, 2017-Ohio-8534, ¶ 45, citing *State v. Partin*, 12th Dist. Butler No. CA2012-09-189, 2013-Ohio-2858. Rather, "mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). The decision to grant or deny a mistrial lies within the sound discretion of the trial court, and "[a]n appellate court

will not disturb the exercise of this discretion absent a showing that the accused has suffered material prejudice." *Pichardo-Reyes* at ¶ 45, quoting *State v. Blankenship*, 102 Ohio App.3d 534, 549 (12th Dist.1995).

{¶ 51} After reviewing the record, we find that the trial court did not abuse its discretion in denying appellant's motion for a mistrial as appellant was not prejudiced by the late discovery of Officer Witte's report. The late discovery did not impact appellant's theory of defense or provide a new line of inquiry for appellant's cross-examination of Trese.

{¶ 52} Regarding appellant's defense at trial, during opening statements defense counsel argued the evidence presented would establish that appellant and Trese had a chance encounter on a public roadway and that Trese did not feel any fear during this encounter. The defense claimed the evidence would show Trese had not changed her driving route so as to avoid appellant and Trese waited to call the police until after she had spoken with her divorce attorney. Defense counsel pursued this theory of defense when cross-examining Trese by asking her about her ability to avoid appellant by traveling a different path home, questioning her about her lack of fear when encountering appellant on the roadway, and inquiring into her decision to notify police of the encounters only after speaking with her attorney. Appellant asserts that defense counsel would have asked additional questions of Trese had counsel known about Trese's statement to Officer Witte that "she did not wish for any criminal charges to come from this incident, but rather for it just to be documented at the request of her lawyer." However, this evidence had already been elicited at trial. Trese testified that she called the police only after talking to her attorney and she stated that she "wasn't trying to put [appellant] back in jail" when reporting his actions. Not having prior knowledge of the report, therefore, did not prevent defense counsel from questioning Trese about her intent in notifying the police of appellant's actions.

{¶ 53} Furthermore, the record reveals that after receiving and reviewing Officer

Witte's report, appellant's theory of defense did not change. During closing statements, defense counsel again argued that Trese should have taken an alternate route to her home after she saw appellant at the intersection of Main Street and Mason Montgomery Road and that the May 17, 2018 encounter with appellant did not cause Trese to feel any fear. Defense counsel also noted that instead of immediately calling the police upon encountering appellant on the roadway, Trese handed over her cellphone so that appellant could be recorded and she waited to report appellant's actions until after speaking with her divorce attorney.

{¶ 54} Accordingly, given that Officer Witte's report was not material to appellant's theory of defense and the statements that Trese had made to Officer Witte were duplicative of testimony already elicited at trial, we find that appellant was not prejudiced by the late discovery of Officer Witte's report and that the trial court did not err in denying appellant's request for a mistrial. Appellant's second assignment of error is overruled.

{¶ 55} Assignment of Error No. 3:

{¶ 56} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT AS THERE WAS INSUFFICIENT EVIDENCE TO CONVICT.

{¶ 57} Assignment of Error No. 4:

{¶ 58} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BECAUSE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 59} Appellant argues in his third and fourth assignments of error that his conviction for violating a protection order was not supported by sufficient evidence and was against the manifest weight of the evidence. Appellant does not contest that a domestic violence civil protection order existed to protect Trese and Brett as of May 17, 2018 or that he had a prior conviction for violating a protection order. Rather, appellant contends the

evidence presented at trial demonstrated that the May 17, 2018 roadway encounters he had with Trese and Brett were "merely accidental" and that he had not recklessly violated the terms of the protection order.

{¶ 60} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 61} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-

Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 62} Appellant was convicted of violating a protection order in violation of R.C. 2919.27(A)(1), which provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued * * * pursuant to section 2919.26 or 3113.31 of the Revised Code." When an offender has a prior conviction for violating a protection order, the offense is a felony of the fifth degree. R.C. 2919.27(B)(3). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or to be of a certain nature." R.C. 2901.22(C). Furthermore, "[a] person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.*

{¶ 63} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for violating a protection order is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented testimony and evidence proving all of the essential elements of the offense beyond a reasonable doubt. Through Trese's and Brett's testimony, the state presented evidence that the domestic violence civil protection order was in effect on March

17, 2018, that Trese and Brett were protected persons under the protection order, and that appellant was prohibited from initiating or having contact with Trese and Brett or from coming within 100 yards of them. Pursuant to the protection order, if accidental contact occurred in any public or private place, including encounters on public and private roads, appellant was to "depart immediately."

{¶ 64} Trese and Brett's testimony, as well as the cellphone recording, demonstrated that after appellant encountered Trese and Brett at the intersection of Mason Montgomery Road and Main Street, appellant failed to comply with the protection order by "depart[ing] immediately." Instead, appellant made contact with Trese and Brett by flipping off Trese and screaming "fuck you" out the open window of his vehicle when driving past them. Appellant then pulled over on the side of the road a couple of buildings down from the intersection in order to force a second encounter. When Trese drove past appellant, he again flipped her off. Appellant then anticipated Trese's route of travel to her home and when she turned onto Mason Road, appellant made an aggressive left turn from Church Street in order to pass by her vehicle a third time. Appellant hung out his car window, screaming "fuck you" and flipping off Trese yet again.

{¶ 65} Given the evidence presented at trial, the jury was entitled to reject appellant's assertion that the multiple roadway encounters were "merely accidental" and, instead, conclude that the encounters were the result of appellant's reckless actions. The jury was further entitled to conclude that appellant's actions in hanging out his window to scream profanities and flip off Trese on multiple occasions were not "accidental." Finally, the fact that Trese and Brett testified they did not feel fear from appellant's actions in no way precluded the jury from finding appellant guilty of violating a protection order. It is not an element of R.C. 2919.27(A)(1) that individuals protected by a protection order feel fear when a defendant violates the order.

{¶ 66} Therefore, for the reasons stated above, we find that appellant's conviction for violating a protection order is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's third and fourth assignments of error are overruled.

{¶ 67} Judgment affirmed.

RINGLAND and PIPER, J., concur.