[Cite as *State v. Derifield*, 2021-Ohio-1351.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-01-002 |
| | : | O P I N I O N |
| - vs - | | 4/19/2021 |
| | : | |
| STEVEN B. DERIFIELD, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20190065


Nicholas A. Adkins, Madison County Prosecuting Attorney, Rachel M. Price, Michael S. Klamo, 59 North Main Street, London, Ohio 43140, for appellee

Harris Law Firm, LLC, Felice Harris, 6031 East Main Street, #187, Columbus, Ohio 43213, for appellant


**HENDRICKSON, J.**

{¶ 1} Appellant, Steven Derifield, appeals from his conviction in the Madison County Court of Common Pleas for one count of having weapons while under disability and three counts of possession of drugs. For the reasons detailed below, we affirm in part, reverse in part, and remand this matter to the trial court for further proceedings.

{¶ 2} On July 11, 2019, Derifield was indicted by a Madison County Grand Jury for:

(1) having weapons under disability in violation of R.C. 2923.13(A)(3), a third-degree felony, (2) possession of heroin in violation of R.C. 2925.11(A), a third-degree felony, (3) possession of cocaine in violation of R.C. 2925.11(A), a first-degree felony, and (4) aggravated possession of methamphetamine in violation of R.C. 2925.11(A), a second-degree felony.

{¶ 3} The charges stemmed from an investigation into a stolen firearm, specifically, an AR-15 rifle. On May 21, 2019, Kurtis Smouse reported to the London Police Department the firearm had been stolen. According to Smouse, the last time he remembered seeing the rifle was when it was propped against the wall of his bedroom by a window that had been left open. Smouse also reported that he believed Chance Archer, Ben Hillman, or Dallas Webb had stolen the rifle because they knew where he kept it in his home.

{¶ 4} A few days later, Smouse returned to the London Police Department with new information. Smouse reported that he had allowed Dallas Webb to use his phone, who then used it to access his Facebook account. When Webb returned the phone, Smouse discovered that he had not signed out of the account, leaving it open to inspection. Upon viewing the account, Smouse learned that Webb, as well as another man, Eric Miller, were attempting to sell the rifle to an individual they referred to as "Dagg." Smouse also provided Dagg's phone number and informed the police that "[Dagg] lives on Clinton St. on the right side."

{¶ 5} Based on prior interactions between the two, Detective Greg Perkins knew that "Dagg," or "Dagwood," was actually Derifield. Detective Perkins, therefore, suspected that Derifield was the individual involved in the purchase of the rifle. The record indicates that Detective Perkins was ultimately able to corroborate the information provided by Smouse with other information provided by a confidential informant.

{¶ 6} Upon receiving this information, Detective Perkins then sought a search

warrant for Derifield's residence. The search warrant included a summary of the information that Detective Perkins had received from Smouse, including reference to the Facebook conversation between Webb and Miller. Detective Perkins did not attach the Facebook messages to the application, nor did Detective Perkins specify how he knew Derifield was, in fact, "Dagwood." The authorizing judge nevertheless signed the search warrant.

{¶ 7} On May 30, 2019, the search warrant was executed by officers from the Madison County Sheriff's Office and the London Police Department. When executing the warrant, detectives on the scene first spoke with the homeowner, Larry Davis, who confirmed that Derifield was inside in the back bedroom with his girlfriend, Marissa Blevins.

{¶ 8} Detective Cooper then entered the residence and announced his presence outside the back bedroom. Shortly thereafter, Detective Cooper encountered Marissa, who was quickly removed from the room and taken outside. Once Marissa was outside, Derifield, who was lying on the bed, was asked to show his hands, placed in handcuffs, and escorted from the room. Detective Cooper then entered the back bedroom where he observed drug paraphernalia in plain sight. This discovery prompted the law enforcement officers to obtain a second search warrant.

{¶ 9} After a second search warrant was authorized, the officers resumed their search and began inventorying the items found in the bedroom. Officers discovered an armoire at the foot of the bed that contained a handgun, hypodermic needles, a stack of money, a wallet with Derifield's driver's license, as well as a box containing a white substance believed to be narcotics. Additional narcotics were found underneath the mattress and inside two safes. The smaller safe contained a bag of suspected narcotics, while the larger safe contained a gun box, ammunition, and four watches. The watches were subsequently swabbed for DNA, one of which positively identified the presence of Derifield's DNA.

{¶ 10} After the search, Derifield was arrested for one count of having weapons under disability and the suspected narcotics were sent for testing. Following his arrest, Derifield moved to suppress all the evidence obtained as a result of the two search warrants. Derifield alleged the first warrant issued was facially and legally deficient and constituted an illegal search and seizure. To support this claim, and as relevant to this appeal, Derifield argued that Detective Perkins made six impermissible inferences not communicated to the issuing judge.

{¶ 11} After a hearing, the trial court denied Derifield's motion to suppress. Thereafter, the matter proceeded to a bench trial for the weapons under disability charge and a jury trial on the remaining three drug-related offenses. Derifield was found guilty on all four counts.

{¶ 12} As a result of the guilty verdicts, the trial court sentenced Derifield to an aggregate sentence of 16 years to a maximum of 21 years and ordered a cumulative fine of $23,000. Derifield now appeals, raising four assignments of error for review. For ease of discussion, we will be addressing Derifield's assignments of error out of order.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.

{¶ 15} In his first assignment of error, Derifield argues the trial court erred by denying his motion to suppress. To support this claim, Derifield raises two separate issues, which, for ease of discussion, we will address separately.

{¶ 16} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position

- 4 -

to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. In turn, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dugan*, 12th Dist. Butler No. CA2012-04-081, 2013-Ohio-447, ¶ 10. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Runyon*, 12th Dist. Clermont No. CA2010-05-032, 2011-Ohio-263, ¶ 12.

{¶ 17} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." To that end, "a judge may issue a search warrant only upon a finding of probable cause in an affidavit or affidavits presented to the judge." *State v. Risner*, 12th Dist. Preble No. CA2017-06-007, 2018-Ohio-1569, ¶ 16, citing Crim.R. 41(C). The affidavit must "name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located." Crim.R. 41(C)(1). "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Crim.R. 41(C)(2); *Risner* at ¶ 16.

{¶ 18} In determining whether probable cause exists to support the issuance of a warrant, courts employ a "totality-of-the-circumstances test." *State v. Thompson*, 12th Dist. Butler No. CA2013-08-158, 2014-Ohio-3380, ¶ 12. Under this test, the judge issuing the

warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. J.A.C.*, 12th Dist. Warren Nos. CA2017-04-044 and CA2017-04-045, 2018-Ohio-361, ¶ 18, quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus.

### 1. *State v. Castagnola*

{¶ 19} Derifield initially argues the trial court erred by denying his motion to suppress since the affidavit in support of the first search warrant lacked sufficient indicia of probable cause. This is because, according to Derifield, the affiant, Detective Perkins, used impermissible inferences not communicated to the issuing judge.

{¶ 20} The Ohio Supreme Court has held that affiants may make reasonable inferences within search-warrant affidavits. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 39. However, to permit an independent review, the facts upon which those inferences are based must be disclosed and the issuing judge must be afforded the opportunity to test any significant inferences drawn by the affiant. *Id.* at ¶ 40. The issuing judge cannot be viewed as neutral and detached if she issues a search warrant that is unknowingly based on the police officer's conclusions. *Id.* at ¶ 41. While search-warrant affidavits will inevitably include undisclosed inferences, there is a line between permissible police interpretation and usurpation of the judge's function. *Id.* at ¶ 49.

{¶ 21} In *Castagnola*, the Ohio Supreme Court adopted the test for reviewing courts confronted with allegations that an inference made by an affiant was presented as an empirical fact in an affidavit, thus usurping the issuing judge's inference-drawing authority. *Id.* When a court reviews the inferences that were given to the judge or magistrate, it must determine if it was an allowable interpretation or if the affiant assumed the judge or

magistrate's job of determining whether there was probable cause to grant the search warrant. *Id.* at ¶ 49.

{¶ 22} The first inquiry is to determine whether the hidden inference was "so significant as to cross the line between permissible interpretation and usurpation." *Id.* A hidden inference "should be deemed significant if it can be fairly concluded that it had a substantial bearing on the magistrate's determination of probable cause" in each of two respects:

> *(1) Relevance*: The more directly relevant the inference is to the magistrate's inquiry, the more substantial its bearing and the more significant it will be. * * *
>
> *(2) Complexity*: The more complex and attenuated the logical process by which a relevant conclusion is reached, the more important it is that the magistrate receive an opportunity to test the inference for validity as part of his neutral and detached function. Conversely, an inference so straightforward, and so patently within the affiant's area of expertise, as to be a matter of "routine interpretation" for the affiant is probably not so significant as to require the magistrate's review even though the conclusion thus reached is highly relevant.

*Id.*

{¶ 23} If the inference is found to be significant, then the reviewing court must look at the second step and examine the affiant's animus. *Id.* at ¶ 50. That is, if the person seeking the search warrant acted "intentionally" or with "conscious indifference," then the warrant should be found invalid, and the evidence should be suppressed. *Id.* On the other hand, if the affiant acted "negligently," then the improper influence should be removed and replaced with the omitted underlying facts. *Id.* The reviewing court shall then reevaluate the warrant to see if it still supports the finding of probable cause. *Id.*

{¶ 24} In the present case, Derifield only contests the validity of the first search warrant, which authorized a search for "[g]uns and or weapons intact or possibly disassembled into various pieces. Any other weapons parts associated with the case(s)

being investigated."  The affidavit alleging probable cause for the search warrant stated:

> On May 21, 2019 at approximately at 22:32 hours.  The London Division of Police took a report of a stolen weapon from 186 South Union St in the City of London, Oh.  The victim, Kurtis Smouse, listed suspects, based on the fact that they knew where the weapon was located inside the residence.
>
> On May 28, 2019 Kurtis Smouse made contact with the London Police Division to advise that he noticed, after allowing one of the listed suspect(s) to borrow his phone, namely Dallas Webb, Webb logged into his facebook account on Smouse's phone and had a conversation with Eric Miller about selling Smouse's stolen weapon to Steven Derifield, "aka….Dagwood."
>
> Smouse furnished the information from the phone along with Derifield's known address/hang-out at the above listed 501 Clinton St. London, Oh.  Derifield's phone number was then verified with other sourced to co-oberate [sic] Smouse's statement.
>
> It is believed that the stolen weapon is inside this address, therefore this warrant is being requested to investigate the case further.

{¶ 25} At the suppression hearing, Derifield alleged Detective Perkins' affidavit contains six impermissible inferences under *Castagnola* with regard to his identity and the location of the weapon contained in the text messages between Webb and Miller.  Those six allegedly impermissible inferences are as follows.

> 1.  The two [Webb and Miller] were having a conversation about selling a stolen weapon.
>
> 2.  The weapon was planned for sale to a person named "Dagg."
>
> 3.  The defendant is "Dagg."
>
> 4.  "Dagg," even if he was supposed to be buying this weapon, knew it to be stolen.
>
> 5.  "Dagg" actually bought the weapon.
>
> 6.  "Dagg" retained the weapon at his home.

{¶ 26} The trial court considered each of the six allegedly improper inferences.  The

court first determined that Inference 4 was not actually inferred because Detective Perkins did not assert that Dagg knew the weapon was stolen and nothing in his affidavit suggested that Dagg knew the weapon was stolen. That finding is supported by the record.

{¶ 27} With respect the Inferences 1, 2, and 5, the court found that each of those inferences were permissible interpretations by Detective Perkins. As noted by the trial court, Detective Perkins was investigating a theft of an AR-15. Initially, Smouse provided the relevant information concerning the AR-15 and a list of suspects who knew where he kept the rifle in his home. Thereafter, Smouse informed Detective Perkins of the Facebook messages where Webb and Miller were discussing "the a.r." and that they "got everything sold for sure." In conjunction, Miller asked Webb whether he made it to Dagg's residence, which Webb replied, "not yet." The two then discussed the need to use a car for transportation because "[y]ou can't walk with this." In short, we agree with the trial court that Inferences 1, 2, and 5 were permissible. Based on the information Detective Perkins had, and with his prior knowledge and training, could reasonably infer that Webb and Miller were speaking about selling the stolen weapon (Inference 1) to a person named "Dagg" (Inference 2) and that Dagg had actually purchased the weapon (Inference 5).

{¶ 28} The court then addressed the two remaining inferences, which are the only two inferences that Derifield contests in his brief. As noted above, Inference 3 is that Derifield is "Dagg." The trial court determined that Detective Perkins was personally familiar with Derifield based on his testimony and that he knew Derifield went by the nickname of "Dagg" or "Dagwood." The trial court found it was a matter of routine interpretation for Detective Perkins.

{¶ 29} Derifield disputes the trial court's finding that his nickname was a matter of routine interpretation. In so doing, Derifield cross-references the victim's statement calling

him "Gagwood" and characterizes Detective Perkin's testimony as faulty.[1] Therefore, according to Derifield, the trial court's decision was improper in that it "was based on the court's erroneous recollection that [Detective Perkins] testified he was personally familiar with Mr. Derifield, that he knew Mr. Derifield had a nickname, and that his nickname was Dagwood."

{¶ 30} Following review, we find that Inference 3 was permissible. Though we concur with the trial court that whether "Dagg" is Derifield is directly relevant, we also agree that it is straightforward and "patently within" Detective Perkins' area of expertise and is permissible under *Castagnola.* In this case, Detective Perkins testified that he knew Derifield from having previously investigated him and that those investigations occurred prior to the instant case. To that end, Detective Perkins testified that Derifield was nicknamed "Dagwood" and, again, confirmed that Derifield went by both "Dagg" and "Dagwood." This point was explicitly made by Detective Perkins when he testified "[w]hen I talk to people, they reference him as Dag[g] or Dagwood." Therefore, contrary to Derifield's claim, we agree with the trial court's finding that Detective Perkin's knowledge of Derifield's nickname as "Dagg" or "Dagwood" was a matter of routine interpretation and was not an improper inference. Derifield's claim otherwise lacks merit.

{¶ 31} The final inference, Inference 6, was whether "Dagg" retained the weapon at his residence. The trial court found that this inference was relevant and complex and, therefore, went to the second inquiry by evaluating Detective Perkins' animus. In so doing, the trial court found that Detective Perkins did not act intentionally or with conscious indifference. The trial court then removed the inference, and the omitted facts were

---

1. The apparent reference the victim made about the identity of an individual named "Gagwood" was not raised in the suppression hearing, any motion, or at trial. The parties proceeded, and Detective Perkins testimony reflects, as if "Gagwood," "Dagwood," and "Dagg" were one in the same.

submitted, and the warrant reevaluated.

{¶ 32} In conducting that evaluation, the trial court placed emphasis on the Facebook messages between Webb and Miller discussing the sale of the AR-15 firearm to Dagwood. This includes, for instance, a message where Webb asked Miller "Are you to dagg," to which Miller responded by saying "I will be here in 30 mins or so y." Webb then asked if Miller "got it sold for sure." To this, Miller responded that he "got everything sold for sure." Based on that additional information, the trial court found that there was probable cause to believe that Derifield retained the firearm at his home.

{¶ 33} Following review, we agree that Inference 6 is relevant and complex and therefore we must evaluate the second inquiry determining Detective Perkins' animus. We also agree that there is no evidence that Detective Perkins acted intentionally or with conscious indifference. Therefore, as correctly determined by the trial court, it is appropriate to remove that inference and submit the omitted facts. As correctly noted by the trial court, the Facebook messages between Webb and Miller indicate Miller was going to "Dagg," that he was going to be there in about 30 minutes, and that he got "everything sold for sure." The messages also indicated that the parties were aware that "[y]ou can't walk with this." Therefore, based on the totality of the circumstances, there was probable cause to believe that the AR-15 firearm had been sold and that it was at Derifield's residence. Accordingly, we find the trial court did not err in determining that sufficient probable cause existed to issue the warrant. Derifield's claim otherwise again lacks merit.

## 2. Particularity

{¶ 34} Derifield also argues the trial court erred by denying his motion to suppress because the warrant lacked sufficient particularity. Specifically, since Detective Perkins possessed a photograph of the missing AR-15 firearm, and because Detective Perkins knew the brand and serial number of the weapon, the search warrant should have identified

the weapon more specifically than "Guns and or weapons in tact [sic] or possibly disassembles into various pieces. Any other weapons parts associated with the case(s) being investigated." We again disagree.

{¶ 35} "Courts addressing the particularity requirement of the Fourth Amendment are concerned with two issues. The first issue is whether the warrant provides sufficient information to 'guide and control' the judgment of the executing officers in what to seize. The second issue is whether the category as specified is too broad in that it includes items that should not be seized." *Castagnola*, 2015-Ohio-1565 at ¶ 79. However, a review of the record reveals that Derifield did not raise this issue in his motion to suppress or during the suppression hearing. The only time this issue was addressed was when the trial court conducted a good faith analysis of whether the items to be seized were described with enough particularity to support probable cause. Therefore, because Derifield did not challenge this issue below, he has waived that issue on appeal. *J.A.C.*, 2018-Ohio-361 at ¶ 23. Accordingly, having now addressed both of the issues raised in Derifield's first assignment of error, Derifield's first assignment of error lacks merit and is overruled.

{¶ 36} Assignment of Error No. 2:

{¶ 37} THE TRIAL COURT ABUSED ITS DISCRETION IN OVERULING MR. DERIFIELD'S MOTION FOR MISTRIAL.

{¶ 38} In his second assignment of error, Derifield argues the trial court erred by denying his request for a mistrial after trial counsel became aware that statements Derifield made during the execution of the search warrant may have been made during a "custodial interrogation" and, therefore, could potentially have been subject to suppression. We disagree.

{¶ 39} "A mistrial should not be ordered merely because of some error or irregularity at trial." *State v. Pichardo-Reyes*, 12th Dist. Butler No. CA2016-09-184, 2017-Ohio-8534,

- 12 -

¶ 45.  Rather, "mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible."  *State v. Thacker*, 12th Dist. Warren No. CA2019-06-058, 2020-Ohio-1318, ¶ 50.  The decision to grant or deny a mistrial lies within the sound discretion of the trial court, and "[a]n appellate court will not disturb the exercise of this discretion absent a showing that the accused has suffered material prejudice."  *Pichardo-Reyes* at ¶ 45.

{¶ 40} At trial, Detective Perkins testified that Derifield admitted to ownership of one bag of drugs located in the room, but denied knowing about the other quantities of drugs found in the room.  Specifically, Detective Perkins testified, in pertinent part, the following:

> State: Okay.  Detective Perkins, as part of your investigation, did you engage in an interview with Mr. Derifield?
>
> Detective Perkins: Yes.
>
> State: And did you attempt to ask him about the drugs that were located in his bedroom?
>
> Detective Perkins: I did.
>
> State: Can you tell us what he said?
>
> Detective Perkins: He said that he didn't know anything about the drugs except that he claimed that one of the bags of crack was his.
>
> State: Okay did he say which bag?
>
> Detective Perkins: He did not indicate which bag.
>
> State: Did he say where he was in the room or how much he had?
>
> Detective Perkins: He did not.  He just said one.
>
> State: He said one of the bags of crack was his?
>
> Detective Perkins: Correct.
>
> State: Did he specifically say crack cocaine or just crack?

Detective Perkins: Crack.

State: Did he talk about the other substances? Did you ask about the other substances? Did he deny them?

Detective Perkins: I attempted to ask him about the other narcotics and other various contraband in the room. He said he didn't know anything about the rest of it.

{¶ 41} Following Detective Perkins' testimony, the state called Detective Cooper who testified about the execution of the search warrant at Derifield's residence. According to Detective Cooper, Derifield and his girlfriend, Marissa, were inside the residence in the back bedroom. Immediately upon entering the bedroom, he requested that Derifield show his hands for officer safety and had him place his hands on the mattress and was then handcuffed and arrested and taken from the bedroom. Derifield was then placed in a cruiser so the officers could complete the search.

{¶ 42} At the close of the state's case, Derifield's counsel moved for a mistrial on the grounds that she was "unaware that [Derifield] was in custody at the time that admission of ownership was made." Derifield now argues that the trial court should have declared a mistrial because he was denied the opportunity to suppress his admission. Derifield maintains that the discovery provided by the state only includes a statement from Detective Perkins that he "interviewed all parties at the scene along with Derifield." Derifield takes issue with that statement and alleges that Detective Perkins' written statement amounts to a violation of Crim.R. 16 because it intentionally leads the reader to believe that he had a voluntary interview with the parties.

{¶ 43} However, after review, we find the trial court did not abuse its discretion in denying Derifield's motion for a mistrial. As an initial matter, we note that the state complied with its obligations under Crim.R.16(B)(1) in providing "[a]ny written or recorded statement by the defendant * * *, including police summaries of such statements" made by the

defendant. Though Derifield characterizes Detective Perkins' statement as misleading, there is no requirement, and Derifield cites no authority, that the state is required to detail the circumstances in which the statement was made. Rather, the record reflects that Derifield and his counsel should have been aware of the statement and the surrounding situation could have been discussed between attorney and client. In this regard, the defense was aware that Derifield had made incriminating statements and thus could have further inquired of the circumstances surrounding the interview in question.

{¶ 44} Furthermore, there is nothing in the record that would indicate that a motion to suppress would have been successful. That is to say, there is no evidence that Derifield was not informed of his *Miranda* rights. The only discussion of that issue came upon Derifield's request for a mistrial when the state briefly mentioned that Detective Perkins had provided Derifield with his *Miranda* rights. To that end, the record does not reflect that the state "willfully failed" to turn over any discovery item in violation of Crim.R. 16 or that the supposedly undisclosed item would have benefitted Derifield in his preparation. Finally, we note that Derifield's proximity to the drugs, including the fact that his wallet was kept in the same location as a portion of the drugs, minimizes any prejudicial effect of Derifield's statement admitting ownership of "one of the bags of crack." Therefore, for the reasons outlined above, Derifield's second assignment of error lacks merit and is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} STEVEN DERIFIELD WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 47} In his fourth assignment of error, Derifield claims he received ineffective assistance of counsel because his trial counsel failed to file a motion to suppress the statements made to Detective Perkins admitting ownership of one of the bags of drugs. Derifield also claims he received ineffective assistance of counsel because his trial counsel

failed to file an affidavit of indigency to waive mandatory fines under R.C. 2929.18(B)(1).

{¶ 48} To prevail on an ineffective assistance of counsel claim, an appellant must establish: (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984); *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 14. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 54, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶ 49} Derifield argues that his trial counsel should have moved to suppress his statements made to Detective Perkins wherein he admitted ownership to one of the bags of drugs found in the room. As noted above, after the state rested, Derifield's trial counsel moved for a mistrial on the basis that she was not aware that Derifield was potentially in a custodial setting during the time he made those statements. However, we note that there is no evidence that trial counsel's performance was deficient on the matter. First, the record does not reflect that a hypothetical motion to suppress would have been successful as there was no evidence to suggest that Derifield was not properly advised of his *Miranda* rights. The record, in fact, indicates that Derifield had been provided with the appropriate warnings. Secondly, given Derifield's proximity to the drugs, and the fact that his personal effects were scattered all across the room, Derifield was not subject to any resulting prejudice. Derifield's claim otherwise lacks merit.

{¶ 50} Derifield also argues that his trial counsel was ineffective because counsel failed to file an affidavit of indigency and for not requesting that a mandatory fine be waived. In this regard, we agree with Derifield.

{¶ 51} Pursuant to R.C. 2929.18(B)(1), the trial court is obligated to impose mandatory fines when the offender commits certain drug-related felonies. *State v. Johnson*, 12th Dist. Butler No. CA2011-11-212, 2014-Ohio-3776, ¶ 10. R.C. 2929.19(B)(5) provides that before imposing a financial sanction, including a mandatory fine under R.C. 2929.18(B)(1), "the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." There are no express factors that must be considered or specific findings that must be made regarding the offender's ability to pay. *State v. Saracco-Rios*, 12th Dist. Madison Nos. CA2016-02-011 and CA2016-03-014, 2016-Ohio-7192, ¶ 10. Compliance with R.C. 2929.19(B)(5) can be shown through the trial court's use of a PSI report, which often provides financial and personal information of the offender, in order to aid the trial court in making its determination. *Johnson* at ¶ 12; *State v. Poff*, 5th Dist. Morgan No. 20AP0005, 2021-Ohio-384, ¶ 43.

{¶ 52} R.C. 2929.18(B)(1) establishes a procedure for avoiding the imposition of mandatory fines applicable to certain felony drug offenses. That section provides:

> If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.

{¶ 53} The failure to file an affidavit of indigency for purposes of waiving a mandatory fine constitutes ineffective assistance of counsel where the record shows a "reasonable probability" that the trial court would have found the defendant indigent and unable to pay the fine had the affidavit been filed. *Johnson* at ¶ 11. However, even then, the filing of an

affidavit of indigency by a defendant does not automatically entitle the defendant to a waiver of the mandatory fine. *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 35. The defendant has the burden to affirmatively demonstrate that he or she is indigent and is unable to pay the mandatory fine. *State v. Manning*, 12th Dist. Butler No. CA2017-08-113, 2018-Ohio-3334, ¶ 21.

{¶ 54} In this case, Derifield's counsel did not file an affidavit of indigency; however, the state requested that the trial court make the necessary findings at the sentencing hearing that Derifield had the ability to pay the mandatory fines. In so doing, the trial court reviewed a presentence-investigative report (PSI) from two years earlier in 2018. The trial court noted that the PSI revealed that Derifield had an extensive criminal history leading to these most recent charges. The trial court also noted that Derifield was self-employed, doing tinting and detailing with an average income of $400 per week. The trial court further noted that Derifield had been previously fired from jobs due to his poor attendance and drug use, and that Derifield reported his current financial condition as poor due to his current incarceration. Nevertheless, the trial court found that Derifield does have future earning capacity. Derifield did not object to the findings made at the time of his sentencing.

{¶ 55} On appeal, Derifield argues that his counsel was ineffective because, had the affidavit of indigency been filed, the court would have possessed more recent information, including his more recent employment history, whether his weekly income had decreased in the preceding two years, a recent medical diagnosis that could impact Derifield's ability to work, and his household size and expenses.

{¶ 56} Based on the record and counsel's failure to file an affidavit alleging indigency, we find this is one of the limited circumstances where there is a reasonable probability that the trial court could have found Derifield to be indigent and unable to pay the mandatory drug fine of $23,000. As previously noted, Derifield was 41 years old at the time of

sentencing and was sentenced to a significant cumulative prison term of between 16 and 21 years. Upon release, Derifield will be approximately 57 to 62 years old with an extensive criminal record. Though Derifield had a history of employment that included his past position as self-employed earning approximately $400 per week, Derifield also has a history of being unable to maintain employment. Based upon these facts and circumstances, we conclude that a reasonable probability exists that Derifield could have proven himself indigent had his counsel submitted an affidavit of indigency.

{¶ 57} In light of the foregoing, to the limited extent that Derifield's counsel failed to file an affidavit of indigency when he faced imposition of mandatory fines, we conclude that Derifield was denied the effective assistance of counsel. Therefore, Derifield's fourth assignment of error is sustained in part, and denied in part. This matter is remanded to the trial court to allow Derifield to file an affidavit of indigency as to the mandatory fines. The trial court is then to conduct a hearing to determine Derifield's indigency status and to consider his ability to pay in accordance with R.C. 2929.18(B)(1).

{¶ 58} Assignment of Error No. 3:

{¶ 59} THE TRIAL COURT ERRED WHEN IT IMPOSED MANDATORY FINES WITHOUT HOLDING A HEARING TO CONSIDER STEVEN DERIFIELD'S PRESENT AND FUTURE ABILITY TO PAY.

{¶ 60} In his third assignment of error, Derifield argues the trial court erred by imposing $23,000 in mandatory fines. However, based on our decision above in regard to Derifield's fourth assignment of error, we now find his third assignment of error is moot. That is to say, based upon our resolution of Derifield's fourth assignment of error, we found there is a reasonable probability that, but for counsel's error in failing to file an affidavit of indigency, the trial court could have found the defendant indigent and unable to pay the fine had the affidavit been filed. Accordingly, Derifield's fourth assignment of error is moot.

{¶ 61} Judgment affirmed in part, reversed in part, and remanded for purposes of allowing Derifield to file an affidavit pursuant to R.C. 2929.18(B)(1) for the trial court's consideration in determining whether to impose a mandatory fine pursuant to R.C. 2929.18.

M. POWELL, P.J., and S. POWELL, J., concur.